Barbara STARKS; Irene Muldrow, Appellants,

v.

RENT–A–CENTER; WRS of Minnesota, Inc.; Capital Minnesota Rents, Inc., a Kansas corporation; Rent–A–Center of America, Inc., a Kansas corporation; Thorn EMI (USA), Inc., a Delaware corporation, Appellees.

No. 93–2801.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1995.

Decided June 22, 1995.

Kay Nord Hunt, Minneapolis, MN, argued (Phillip A. Cole, David L. Ramp and Sey-

mour J. Mansfield, on the brief), for appellant.

John C. Dods, Kansas City, MO, argued (Peter E. Strand and Shannon L. Spangler, Kansas City, MO, and J. Patrick McDavitt and John Troyer of Minneapolis, MN, on the brief), for appellee.

Before FAGG, MAGILL, and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

Plaintiffs appeal the district court's [1] denial of their motion for a new trial in this action, claiming that Rent–A–Center's rent-to-own contracts constitute consumer credit sales and violate Minnesota consumer protection statutes. Plaintiffs argue that the court erroneously submitted the issue of "nominality" of consideration to the jury, that the court's instructions on nominality were erroneous, and that the court abused its discretion in admitting evidence of the used wholesale value of rented items. We affirm.

## I. BACKGROUND

Rent–A–Center operates a chain of "rent-to-own" stores, providing consumers with a wide variety of household items available for rental on a weekly or monthly basis. At the end of each weekly or monthly rental term, the renter has the unilateral option to extend the rental contract for another term, or to return the goods, which automatically terminates the contract. The contract is also automatically terminated if the consumer does not timely pay each term's rental fee. The standard pre-printed rental agreement also provides that, after a specified number of rental payments, the consumer has the option to acquire ownership of the rented item by paying an additional "option-to-purchase" price, set at an amount equal to 8.7 weekly rental payments. The consumer can choose to pay this amount as a block, or as weekly installments over the next 8.7 weeks.[2]

Approximately 70% of Rent–A–Center customers terminate their rental contracts rather than choosing to acquire ownership of the rented item. Delivery, installation, maintenance and repairs of rented items are the responsibility of Rent–A–Center. The total cost of acquiring ownership of an item through Rent–A–Center, including the rental installments paid until the ownership option arises, is higher than buying the same item at retail.

Appellants Barbara Starks and Irene Muldrow, Rent–A–Center customers, brought suit against Rent–A–Center claiming that: the Rent–A–Center rental agreements with option to purchase are in violation of Minnesota statutes barring deceptive or fraudulent trade practices [3]; the agreements are consumer credit sales under Minnesota law because the ownership acquisition payment was "nominal," and that the agreements are in violation of Minnesota statutes regulating consumer credit sales [4]; and the agreements are in violation of the Federal Truth in Lending Act and RICO. Rent–A–Center counterclaimed for replevin of the items Starks and Muldrow had rented. The court dismissed the Federal Truth in Lending Act claim for failure to state a claim on which relief could be granted, reserved appellants' claims for equitable relief and unconscionability and

---

**1.** The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

**2.** The rental agreement signed by customers when initially renting an item from Rent–A–Center includes the following provision:

> **Option to Purchase.** If you renew this agreement for successive weekly or monthly terms totaling either ___ weeks or ___ months, you may continue to rent on the same terms or if you choose you may purchase the property by paying us its then fair market value. This value will depend on the condition of the property, future economic conditions and other fac-

tors. But we agree that for the purpose of this option, the fair market value won't exceed $___ [amount equal to 8.7 times the weekly rental rate].

App. of Resp't at A.1.

**3.** Appellants assert that the agreements constitute deceptive trade practice in violation of Minn. Stat. § 325D.44 and § 325F.69, and unconscionable marketing in violation of Minn.Stat. § 336.2–301.

**4.** Appellants assert that the agreements constitute violations of the Minnesota consumer protection provision, Minn.Stat. § 325G.16, subd. 4, and usury in violation of Minn.Stat. § 334.01.

Rent–A–Center's claim for replevin, and certified a class for the remaining claims with Starks and Muldrow as the named plaintiffs.

After trial, the jury returned a verdict in favor of Rent–A–Center on all claims presented to the jury. Following the verdict, the district court granted judgment for Rent–A–Center on plaintiffs' two reserved claims and on Rent–A–Center's counterclaim for replevin. Plaintiffs now appeal.

## II. DISCUSSION

Plaintiffs' argument on appeal centers on the question of whether the rental agreements with option-to-purchase meet the Minnesota statutory definition of consumer credit sales. Plaintiffs claim first that the ownership acquisition payment, equal to 8.7 weeks' rental payments, was "nominal" as a matter of law, and thus that the district court erred in submitting the question of nominality to the jury. In the alternative, plaintiffs claim that the jury instructions regarding nominality were erroneous under Minnesota law, and request certification to the Minnesota Supreme Court of the question of whether the Rent–A–Center contracts constitute consumer credit sales. Rent–A–Center, however, argues that plaintiffs waived appellate review of these claims by failing to enter a proper objection to the submission of the issue to the jury and to the instructions. Finally, plaintiffs allege error in the admission of testimony regarding the used wholesale value of Rent–A–Center items as compared to the ownership acquisition payment.

### A. Minnesota Consumer Credit Sales

Minnesota's Consumer Credit Sales provisions, Minn.Stat. § 325G.15 and § 325G.16, apply only to consumer credit sales as defined by the statute, and thus apply to the Rent–A–Center agreements only if they meet the definition of a consumer credit sale. Minnesota's usury provision, Minn.Stat. § 334.01, applies only as a limitation on interest, not on rental fees. Therefore, the usury provision also applies to Rent–A–Center's agreements only if they are redefined as credit sales including interest payments.

An agreement in the form of a terminable lease of goods constitutes a consumer credit sale only if:

(a) The ... lessee has the option to renew the contract by making the payments specified in the contract; (b) the contract obligates the ... lessor to transfer ownership of the property to the ... lessee for no other or a nominal consideration upon full compliance by the ... lessee with the ... lessee's obligations under the contract including any obligation incurred by reason of the exercise of an option by the ... lessee to renew the contract; and (c) the payments contracted for by the ... lessee, including those payments pursuant to the exercise of an option by the ... lessee to renew the contract, are substantially equivalent to or in excess of the aggregate value of the property and services involved.

Minn.Stat. § 325G.15, subd. 4. The district court found, as a matter of law, that Rent–A–Center's agreements met requirements (a) and (c) of the above definition, but found that there was a question of fact for the jury as to whether the consideration paid on exercising an option-to-purchase was nominal, as required in part (b) of the definition.

### B. Waiver

■ Plaintiffs argue that the consideration was nominal as a matter of law and thus nominality should not have been submitted to the jury, and, alternatively, that the instructions given to the jury regarding nominality were erroneous. Plaintiffs, however, failed to enter a specific objection either to the submission of the issue to the jury or to the instructions as given, and we conclude that these arguments have not been preserved for appellate review.

■ Under Federal Rule of Civil Procedure 51, "no party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." The grounds of the objection must be specifically stated, and the error claimed on appeal must be based on the same grounds stated in the objection.

See *Tinnon v. Burlington N.R.R.*, 898 F.2d 1340, 1343 (8th Cir.), *cert. denied*, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990); *Christopherson v. Deere & Co.*, 941 F.2d 692, 694 (8th Cir.1991). In *Tillwick v. Sears, Roebuck & Co.*, 963 F.2d 1097 (8th Cir.1992), we held that objection was not properly made when plaintiff's trial brief included seven pages arguing that contributory negligence was not a defense in the case, but plaintiff failed to object to the jury instructions presenting contributory negligence. *Id.* at 1098–99. Plaintiff asked for, and received, an amendment to the instruction limiting contributory negligence, but failed to object to the instruction when it was presented to the jury. *Id.* Further, "[t]he mere tender of an alternative instruction without objecting to some specific error in the trial court's charge or explaining why the proffered instruction better states the law does not preserve the error for appeal." *Farmland Indus. v. Frazier–Parrott Commodities*, 871 F.2d 1402, 1408 (8th Cir.1989) (quoting *Johnson v. Houser*, 704 F.2d 1049, 1051 (8th Cir.1983)). The error is also not preserved if the party claiming error offers a "virtually identical instruction." *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 269 (8th Cir.1993). "[I]t is fundamental that where the [party claiming error] 'opened the door' and 'invited error' there can be no reversible error." *Id.* (quoting *Federal Crop Ins. Co. v. Hester*, 765 F.2d 723, 727 (8th Cir.1985)).

■ Plaintiffs argue that objection to the instruction on nominality was not necessary because the trial judge indicated at different points during the trial that he would prefer counsel not repeat arguments that had already been presented. In this circuit, however, concern that the trial judge would prefer no objection or the view that the objection would be futile does not relieve parties from making an objection to preserve errors for review. *Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir.1987); *accord United States v. Warner*, 855 F.2d 372, 374 (7th Cir.1988) ("Warner refrained from objecting so as not to incur the wrath of the trial judge, who had stated he did not want to discuss the burden of proof issue further. This does not excuse a failure to object. Counsel has a 'duty to object, and even at the risk of incurring the

displeasure of the trial court, to insist upon his objection.'" (internal quotations omitted)).

Further, both instances in which the judge admonished counsel for attempting to repeat arguments were addressed, not to plaintiffs' counsel, but to Rent–A–Center's counsel, with whom the judge had had previous, and apparently difficult, dealings. *See* II Trial Tr. at 30–31; V Trial Tr. at 529. In addition, both instances clearly concerned arguments repeated during a single phase of the proceedings, for instance, repeating an argument made during oral argument in the morning in response to the judge's ruling on the issue in the afternoon. *See* V Trial Tr. at 529. By the time the instruction conference was held, on February 26, 1993, nearly a year had passed since the judge, ruling on Rent–A–Center's motion for summary judgment, had last considered whether nominality was a question of fact for the jury. Midway through trial, the judge invited argument regarding his proposed instructions on nominality, which had also last been argued nearly a year earlier. Plaintiffs did not argue the issues they now raise on appeal, specifically that nominality should not be a jury question, and that the U.C.C. definition of nominality should not apply; their only significant argument was that a paragraph regarding "economic reality" should be added to the definition.

At the start of argument, the judge stated that he wished to "come to a conclusion as to how to properly define nominality, at least for this point in the trial." V Trial Tr. at 467. This indicates that the definition of nominality presented to the jury midway through trial was not graven in stone. Furthermore, during the on-record instruction conference on the final day of trial, nearly a week later, the judge went through each individual instruction in order, hearing objections and argument on each. The record bears no indication that the court was impatient or disinclined to listen to proper objections; in fact, his thoroughness indicates an awareness of the importance of giving counsel opportunity to object at this crucial point in the proceedings. Nevertheless, when the

nominality instruction was argued, plaintiffs' counsel said only that he

> would just state a general objection to the 'nominality' instruction as being given by the Court as being an inappropriate and inaccurate statement of the law. We have submitted some other statements to the Court that we believe are more accurate and that would be a more complete statement of the law.

XII Trial Tr. at 1360. Notably, counsel for Rent–A–Center managed to present specific objections with specific grounds to the nominality instruction, receiving no complaint from the court about his brief restatement of arguments previously made. Plaintiffs' general objection provides the court with no guidance whatsoever as to the nature of their objection: previous statements submitted included arguments that there was nominality as a matter of law, that the U.C.C. definition of nominality was inapplicable, that the second part of the U.C.C. definition was the more important part, and that an "economic reality" test should be added to the instruction. The plaintiffs' most recent submission to the court, their proposed instruction, included no reference to nominality as a matter of law, and relied on the U.C.C. definition of nominality: The only variation from the court's proposed instructions was the economic reality paragraph, and to expect the court to decipher the general objection as applying to "statements" other than the plaintiffs' proposed instruction is unreasonable. Because plaintiffs did not specifically object to the court's instructions, they have failed to preserve this point for appeal.

Plaintiffs' contention that the motion for summary judgment, which included, among many other arguments, the argument that the option payment was nominal as a matter of law, preserves the claim for appeal is meritless. The motions for summary judgment were the last time before submission of the case to the jury that the court was asked to rule on this issue. Plaintiffs not only did not object to the instruction submitting the issue to the jury, but also failed to bring a

motion for judgment as a matter of law before the jury retired for deliberation.[5] A motion for judgment as a matter of law at the close of evidence would at least have renewed the arguments made in the summary judgment motion, and brought these arguments to the court's attention after evidence had been heard. *Cf. St. Louis v. Praprotnik,* 485 U.S. 112, 120, 108 S.Ct. 915, 922, 99 L.Ed.2d 107 (1987). Instead, plaintiffs proposed instructions including a nominality instruction similar to the instruction given by the court, at a minimum indicating that they had abandoned their previous argument, and perhaps inviting the error of which they now complain.

### C. Plaintiff Error

Because plaintiffs failed to enter a specific objection to the jury instructions on nominality, we will reverse only if we find plain error. *Christopherson,* 941 F.2d at 694. If there was error by the court in its nominality instructions to the jury, it was far from "plain," which is synonymous with clear, or obvious. *See United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993). There is no definition of nominality in Minnesota case law or statutes, and the court found that material issues of fact existed regarding nominality. The parties presented different theories of what constitutes nominality, and conflicting evidence regarding the level of the option-to-purchase payment. It was not plain error for the court to submit this issue to the jury. Further, given the lack of a Minnesota definition of nominality, it was not plain error for the court to turn to the definition provided in the U.C.C., which defines nominality in the context of redefining leases as sales, the same issue presented in this case.

The only argument brought by plaintiffs that could possibly support a finding of plain error is based on two subsequent cases in the Minnesota courts. Plaintiffs argue that *Miller v. Colortyme,* 518 N.W.2d 544 (Minn. 1994), and *Fogie v. Rent–A–Center,* 518

---

**5.** Plaintiffs did bring a motion for judgment as a matter of law after the verdict, which was denied. We note that a presubmission motion for judgment as a matter of law must precede a postverdict motion, and thus the motion for judgment as a matter of law following the verdict was invalid. *See* Fed.R.Civ.P. 50(a).

N.W.2d 544 (Minn.1994), definitively settle the question of nominality under Minnesota law in the instant case, and thus that the court erred in presenting the question of nominality to the jury. *Miller* and *Fogie,* however, do not address nominality.[6] The rent-to-own contracts in *Miller* did not include an option-to-purchase which must be elected by the consumer, and which obliges the consumer to pay a specific additional sum in order to acquire ownership of the previously rented item. *See Miller,* 518 N.W.2d at 546. Instead, the *Miller* contracts automatically transferred ownership of the rented item to the consumer after a specified number of rental renewals, with no additional consideration beyond the previously paid rental fees. *Id.* Therefore, nominality was never at issue in *Miller:* Under Minn.Stat. § 325G.15, subd. 5(b), a terminable lease becomes a sale if, *inter alia,* the lessor must transfer ownership to the lessee for "no other or a nominal consideration upon full compliance" by the lessee with the lessee's obligations under the contract. Since, in *Miller,* there was no other consideration than the lessee's compliance with the rental contract, nominal consideration was never considered by the Minnesota Supreme Court, and *Miller* does not provide guidance in this case. *See Miller,* 518 N.W.2d at 547. We therefore find no plain error in the district court's submission of the nominality question to the jury or in its instructions.

## D. Certification

■ Plaintiffs have also presented us with a motion to certify the question of nominality to the Minnesota Supreme Court. Plaintiffs, however, have already brought a motion to certify questions concerning this case to the Minnesota Supreme Court. Nearly two years ago, on September 9, 1993, we denied plaintiffs' motion for certification, and we decline to reverse ourselves now.

■ Although phrased differently, the prior motion for certification similarly concerned nominality: whether the option-to-purchase price had any "economic sub-

stance." "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstances, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). In this circuit, a prior decision stands as the law of the case, and settled issues are not to be relitigated. *See Omaha Indian Tribe v. Tract I—Blackbird Bend Area,* 933 F.2d 1462, 1468 (8th Cir.1991), *cert. denied,* 502 U.S. 942, 112 S.Ct. 379, 116 L.Ed.2d 331 (1991). Our initial decision was not clearly erroneous, and, as discussed above, *Miller* does not have any impact upon the question of nominality in this case. Therefore, we deny plaintiffs' motion for certification.

## E. Admission of Evidence

■ Finally, plaintiffs argue that the court abused its discretion in admitting evidence as to the used wholesale value of the rented items at the time the option-to-purchase was exercised by consumers. "In ruling on the admissibility of evidence, the trial judge has wide discretion, and his decisions will not be disturbed unless there is a clear and prejudicial abuse of discretion." *Dillon,* 986 F.2d at 270 (quoting *Roth v. Black & Decker, U.S., Inc.,* 737 F.2d 779, 783 (8th Cir.1984)). The used wholesale value of these items is relevant to determining the used retail price, because retail prices are in general based on wholesale prices plus a markup. We do not find that the district court abused its discretion in admitting this relevant evidence.

## III. CONCLUSION

Plaintiffs waived appellate review of the submission of the question of nominality to the jury and the nominality instructions, and we do not find plain error. In addition, we find that the district court did not abuse its discretion in admitting evidence of used

---

**6.** *Fogie* simply refers to *Miller* for its facts and reasoning. 518 N.W.2d 544. The discussion of *Miller* applies equally to *Fogie.*

wholesale value. We therefore affirm the district court's denial of plaintiffs' motion for a new trial, and deny plaintiffs' motion for certification to the state court.