**DIVERSEY LEVER, INC.,**
**Plaintiff–Appellee,**

v.

**ECOLAB, INC., Defendant–Appellant.**

**Nos. 98–1380, 98–1447, 98–1472, 98–1534.**

United States Court of Appeals,
Federal Circuit.

Decided Sept. 10, 1999.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Oct. 20, 1999.

Stephen B. Judlowe, Hopgood, Calimafde, Kalil & Judlowe, LLP, New York, New York, argued, for plaintiff-appellee. With him on the brief were Ira B. Winkler, and Adam T. Bernstein. Also on the brief was Robert A. Dunn, Dinnin & Dunn, P.C., Troy, Michigan.

Frank P. Porcelli, Fish & Richardson, Boston, Massachusetts, argued, for defendant-appellant. On the brief were Douglas J. Williams, Mark D. Schuman, J. Derek Vandenburgh, and Daniel M. Pauly, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., of Minneapolis, Minnesota. Of counsel were Thomas N. Young, and Thomas E. Bejin, Young & Basile, Troy, Michigan.

Before MAYER, Chief Judge,
NEWMAN and SCHALL, Circuit Judges.

MAYER, Chief Judge.

Ecolab, Inc. ("Ecolab") appeals the judgment of the United States District Court for the Eastern District of Michigan, No. 96–CV–73112, which granted Diversey Lever, Inc. ("Diversey Lever") summary judgment that Ecolab infringed U.S. Patent Nos. 5,009,801 ("the '801 patent") and 5,073,280 ("the '280 patent"). Because the district court properly interpreted the parties' settlement agreement, we affirm.

*Background*

In 1991, Diversey Lever's predecessors, Diversey Corporation and Diversey Corp. (collectively "Diversey"), brought a patent infringement suit against Ecolab alleging that Ecolab's PET GUARD lubricant for bottling conveyors infringed Diversey's '801 and '280 patents. Both patents are directed to methods of inhibiting stress cracking in the plastic (polyethylene terephthalate, or "PET") bottles used by beverage bottlers through the use of particular chemical additives in conveyor lubricants. The parties agreed on a settlement, and the resulting settlement agreement and an accompanying consent judgment were executed in July 1993.

The agreement states that "the '801 and '280 patents are valid and enforceable" and that Ecolab "will not directly or indirectly aid, assist or participate in any action contesting the validity of either the '801 or '280 patents, except as required by Court Order or subpoena." Additionally, the agreement prohibits Ecolab from making or selling products within the scope of a Defined Products clause, which defines two specific chemical compositions for "fatty acid" lubricants. The agreement states that "[n]either party is entitled to any further relief than granted herein."

Interpreting the agreement to mean that it was free to develop products outside the scope of the Defined Products clause without fear of further action by Diversey, Ecolab developed and introduced two new conveyor lubricants, PET GUARD IIB and PET*STAR. The chem-

ical composition of these two products places them outside the scope of the Defined Products clause, but Ecolab does not dispute that they infringe the '801 and '280 patents.

In mid–1996, Diversey was purchased by UniLever, and the resulting corporation, Diversey Lever, brought the present suit, alleging that Ecolab's PET GUARD IIB and PET*STAR products infringe the patents.

The district court granted Diversey Lever's partial summary judgment motion, holding that the consent judgment precludes Ecolab from contesting the validity of the patent, that Diversey Lever can enforce the '801 and '280 patents against Ecolab products outside the scope of the Defined Products clause, and that Ecolab literally infringed the patents. Subsequently, Ecolab attempted to assert an estoppel defense to the infringement claim. The district court held that Ecolab waived the estoppel defense by failing to argue it in response to Diversey Lever's motion for partial summary judgment.

### Discussion

■ Consent judgments "are interpreted according to general principles of contract law." *Scosche Indus. Inc. v. Visor Gear Inc.*, 121 F.3d 675, 678, 43 USPQ2d 1659, 1662 (Fed.Cir.1997). "[T]he scope of a consent decree is limited to its terms and ... its meaning should not be strained." *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 481, 20 USPQ2d 1241, 1250 (Fed.Cir.1991) (citing *United States v. Armour & Co.*, 402 U.S. 673, 681, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)).

■ We have recognized that a consent judgment of patent validity may preclude a party from asserting invalidity in subsequent litigation involving new accused products, as long as the agreement manifests an intent to be bound. *See Foster*, 947 F.2d at 481, 20 USPQ2d at 1250. However, any surrender of the right to challenge validity of a patent is construed narrowly. *See id.*

■ In *Foster*, we refused to hold that a consent judgment had surrendered the invalidity defense as to future accused products, even though the agreement stated that the patents were "valid and enforceable in all respects." *See id.* The settlement agreement between Diversey and Ecolab similarly declares "that the '801 and '280 patents are valid and enforceable," but *Foster* requires more for a waiver of the invalidity defense as to future accused products.

■ To show that Ecolab's right to contest validity of the patents has been unequivocally foreclosed, Diversey Lever points to the settlement agreement provision that Ecolab will not "directly or indirectly aid, assist or participate in any action contesting the validity" of the patents. Ecolab argues that this clause merely precludes it from voluntarily assisting third parties accused of infringement by Diversey Lever. We cannot agree. As the district court held, "only one interpretation flows from" the clause, which uses the broadest possible language in describing the prohibited activity—that Ecolab surrendered its right to challenge the validity of the patents in any context.

■ We see no merit to Ecolab's argument that the Defined Products clause tacitly grants it permission to infringe the '801 and '280 patents by manufacturing products outside of the scope of the clause. And we believe the trial court correctly held that Ecolab's failure to raise its affirmative defense of estoppel in opposition to Diversey Lever's summary judgment motion constituted an abandonment of the defense. Ecolab argues that Diversey Lever's motion for partial summary judgment on the issue of "liability" did not require it to raise its estoppel defense, which is in a separate category of defenses to a claim of infringement under 35 U.S.C. § 282 (1994). Section 282 sets out three separate categories of defenses: noninfringement, absence of liability for infringement, and unenforceability. Ecolab argues that equitable estoppel is an "unen-

forceability" defense rather than an "absence of liability" defense, and as such it could be reserved. However, regardless of its classification under section 282, an affirmative defense must be raised in response to a summary judgment motion, or it is waived. *See, e.g., United Mine Workers of America 1974 Pension v. Pittston Co.,* 984 F.2d 469, 478 (D.C.Cir.1993); *cf. Nossen v. United States,* 189 Ct.Cl. 1, 416 F.2d 1362, 1371 (1969).

### Conclusion

Accordingly, the judgment of the United States District Court for the Eastern District of Michigan is affirmed.

### AFFIRMED