**ECOLAB INC., Plaintiff–Appellant,**

v.

**PARACLIPSE, INC. (doing business as Paraclipse Automated Insect Control Division), Defendant–Cross Appellant.**

Nos. 01–1204, 01–1205.

United States Court of Appeals, Federal Circuit.

April 3, 2002.

Rehearing and Rehearing En Banc Denied May 9, 2002.

J. Derek Vandenburgh, Merchant & Gould P.C., of Minneapolis, MN, argued for plaintiff-appellant. With him on the brief were Douglas J. Williams and Jonelle R. Witt. Of counsel on the brief was Andrew D. Sorensen, Ecolab Inc., of St. Paul, MN.

Keith V. Rockey, Rockey, Milnamow & Katz, Ltd., of Chicago, IL, argued for defendant-cross appellant. With him on the brief was Kathleen A. Lyons. Of counsel on the brief was James J. Hill, Emrich & Dithmar, of Chicago, IL.

Before CLEVENGER, GAJARSA, and DYK, Circuit Judges.

DECISION

DYK, Circuit Judge.

Ecolab Inc. ("Ecolab") brought suit against Paraclipse, Inc. ("Paraclipse") in the United States District Court for the District of Nebraska for infringement of its U.S. Patent No. 5,365,690 ("the '690 patent"). Ecolab appeals the decision of the district court upholding a jury verdict of noninfringement and denying Ecolab's motion for judgment as a matter of law or for a new trial. *Ecolab Inc. v. Paraclipse, Inc.*, No. 8:97CV304 (D.Neb. Dec. 22, 2000). Paraclipse cross-appeals the district court's decision barring Paraclipse from challenging the validity of the '690 patent.

We hold that the district court correctly upheld the jury verdict of noninfringement as to claim 1 of the '690 patent. But because we find that the district court gave an erroneous and prejudicial jury instruction as to claim 16, we vacate the verdict of noninfringement as to claim 16 and remand for a new trial. We further hold that in the new trial, Paraclipse is entitled to challenge the validity of the '690 patent, because the district court erred in holding that an earlier settlement agreement foreclosed Paraclipse's invalidity defense. We therefore affirm-in-part, reverse-in-part, and remand for a new trial.

I

The '690 patent relates to lighted insect traps used to trap flies in restaurants, hospitals, and other sensitive areas where traditional means of insect control are un-

desirable. Ecolab sought to develop an insect trap that would be effective in controlling insects in customer-sensitive areas, but that would also be attractive and unobtrusive so customers would not normally recognize the products as insect traps. Recognizing that prior art traps "neither display [insect] attractant light to the max-imum advantage nor use an improved trap insect entry geometry," '690 patent, col. 1, ll. 59–61, Ecolab developed the invention recited in the '690 patent known as the Stealth trap. The figures of the patent are illustrative of the claimed invention and are reproduced below.

FIG. I

FIG. 2

Figure 1 shows a housing having side walls, a bottom wall, and an upwardly facing opening for insect entry. '690 patent, col. 8, ll. 5–19. A light source is positioned within the housing such that the light source cannot be directly viewed when the trap is mounted at or above eye level. *Id.,* col. 8, ll. 21–28. The trap creates a display of insect attractant light on the vertical wall above the trap on which the trap is mounted. *Id.,* col. 2, ll. 34–40. The invention includes at least one "reflecting surface" that projects reflected light onto the wall to enhance or enlarge the "footprint" of light on the wall surface. *Id.,* col. 8, ll. 34–44. Flying insects are attracted to the footprint of light on the wall above the trap and enter the trap by moving downward through the upwardly-facing opening, where they are immobilized on an adhesive layer contained within the trap. *Id.*

Independent claims 1 and 16 of the '690 patent are at issue on appeal. Claim 1 recites:

1. A flying insect trap that uses a display of insect attractant light reflected and radiated onto a vertical mounting surface, said trap comprising:

 (a) a means for mounting a flying insect trap on a vertical mounting surface;

 (b) a source of insect attractant light; and

 (c) a housing enclosing the source, said housing comprising:

 (i) *an internal reflecting surface of the housing,* positioned with respect to the horizontal such that light from the source of the insect attracting light is directed onto the vertical mounting surface forming a diffused light pattern; and

 (ii) an insect immobilization surface; wherein the housing comprises an upwardly facing opening for insect entry and the insect attractant light source is placed in the housing below an edge of the upwardly facing opening.

Col. 8, l. 53—col. 9, l. 2 (emphasis added).

Claim 16 recites:

16. A flying insect trap using reflected and radiated light as an insect attractant, which trap comprises a vertical, planar surface, a housing containing a means to mount the housing on the vertical, planar surface, an insect immobilization surface and a source of insect attractant light wherein the housing is configured such that when mounted on the vertical, planar surface, the source cannot be directly viewed and *the housing contains a surface* at an angle to the horizontal, planar surface of less than 80° *which reflects light* from the source *onto the vertical, planar surface,* and the trap has an upwardly facing opening.

Col. 10, ll. 9–20 (emphasis added).

Paraclipse manufactures and sells flying insect traps that compete with Ecolab's Stealth® traps. This is the second time Ecolab has sued Paraclipse for infringement of the '690 patent. Ecolab first sued Paraclipse in 1994, alleging that Paraclipse's Insect Inn II trap infringed the '690 patent. After two years of litigation and just prior to trial, that case was settled by entry of a consent judgment that provided that: "This Court finds and concludes, and Paraclipse agrees, that the '690 patent is a valid patent," that "Paraclipse has infringed the '690 patent by making, using and selling its 'Insect Inn II' product," and that "the invention of the '690 patent is a pioneering invention." *Ecolab Inc. v. Paraclipse, Inc.,* No. 8:94CV601 (D.Neb. Oct. 17, 1996) (order entering consent judgment). The consent judgment required Paraclipse to discontinue sale of the Insect Inn II trap. *Id.*

Shortly thereafter, Paraclipse introduced the Insect Inn IV trap, the device at issue here. The Insect Inn IV trap has a housing that is closed on the sides and the bottom but open at the top, a UV light bulb within the housing that shines an insect attractant light onto the wall above the trap, and a cartridge having an adhesive surface for trapping flies. The Insect Inn IV trap also includes a shiny black reflector plate immediately below the light bulb, and a Mylar strip located on the vertical back wall of the housing. The insect Inn IV trap differs from the Insect Inn II trap in that (1) it lacks a reflector located between the bulb and the outer wall of the housing, (2) the inside of the outer walls of the housing are black in color, and (3) it has two elements that were not present in the Insect Inn II trap: a shiny black reflector plate immediately below the light bulb and a Mylar strip on the vertical back wall of the housing. Ecolab sued Paraclipse a second time, alleging that the Insect Inn IV trap infringed the '690 patent, U.S. Patent No. 5,507,017 (the "'017 patent"), and U.S. Design Patent No. D357,762.[1]

The district court held a Markman hearing in November 1998. On August 18, 1999, the district court issued its Markman Order construing the disputed terms "internal reflecting surface"[2] and "insect attractant light." *Ecolab Inc. v. Paraclipse, Inc.,* No. 8:97CV304 (D.Neb. Aug. 18,

1. Ecolab withdrew all claims regarding the '017 patent and does not challenge the jury verdict of noninfringement of the design patent. Only the '690 patent is at issue on appeal.

2. The term "internal reflecting surface" in claim 1 has the same meaning as the phrase

"a surface ... which reflects light" in claim 16, though, as discussed below, other language in the two claims leads to a different interpretation of the claims. In the discussion below we do not separately discuss the "surface ... which reflects light" language.

1999) (order on Markman hearing) (*"Markman Order"*). The district court held that: (1) the term "internal reflecting surface" does not cover a "black matte layer or surface inside the housing;" (2) the term "internal reflecting surface" does not cover a "vertical reflective surface which functions primarily to direct light outward into the room rather than upward on the wall above the trap;" and (3) the "limitation [of dependent claim 25] regarding five foot-candles of reflected light" should not be read into the other claims. *Markman Order* at 21. The court did not limit the term "internal reflecting surface" to a particular location within the housing.

Before trial, Ecolab filed a motion in limine to preclude Paraclipse from challenging the validity of the '690 patent at trial, arguing that Paraclipse waived the right to assert an invalidity defense by entering into the consent judgment that provided that: "This Court finds and concludes, and Paraclipse agrees, that the '690 patent is a valid patent." *Ecolab Inc. v. Paraclipse, Inc.*, No. 8:94CV601 (D.Neb. Oct. 17, 1996) (order entering consent judgment). The district court granted the motion, and barred Paraclipse from introducing evidence challenging the validity of the '690 patent. *Ecolab*, No. 8:97CV304 (D.Neb. Dec. 7, 2000) (order granting motion in limine). The district court also barred Paraclipse from defending on the ground that it was practicing the prior art of expired U.S. Patent No. 4,876,822 ("the White patent"). *Id.*

The case was tried to a jury in December 2000. With respect to claim interpretation, the district court gave the jury Instruction No. 11:

The terms "interior reflective surface" and "internal reflecting surface," used in

the claims of the '690 patent, do not include a black matte surface inside the housing, that is, a black matte on the inner wall of the housing. "Direct light," as described in the patents, means light radiated directly from the source of the light onto the wall above the unit. The term "reflected light," as used in the patent claims, means the light from the source which bounces off, i.e., is reflected off, a reflecting surface on the inside wall of the housing cover. An internal reflecting surface which is "positioned with respect to the horizontal such that light from the source of the insect attractant light is directed onto the vertical mounting surface" does not include vertical surfaces on the rear wall of the housing which are positioned to reflect light out into a room. Even if some "incidental" illumination of the wall results from a reflective surface on the rear wall of the housing, the claims do not include a vertical reflective surface which functions primarily to direct light outward into the room, rather than upward onto the wall above the trap. (emphasis added). The jury returned a verdict of noninfringement as to both claims.

▇ Ecolab filed a motion pursuant to Fed.R.Civ.P. 50(b) and 59(a) seeking judgment of infringement as a matter or law, or a new trial. The district court denied the motion. *Ecolab Inc. v. Paraclipse, Inc.*, No. 8:97CV304 (D.Neb. Jan. 19, 2001). Ecolab timely filed this appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1) (1994).[3]

## II

▇ We review the denial of a motion for judgment as a matter of law without

---

**3.** Paraclipse's pending motion for attorney's fees does not prevent us from exercising juris-

diction. The mere fact that the attorney's fee issue has not been resolved does not render

deference. *Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014, 46 USPQ2d 1109, 1111 (Fed.Cir.1998). We review the denial of a motion for a new trial for abuse of discretion. *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 854, 20 USPQ2d 1252, 1254–55 (Fed.Cir. 1991), *cert. denied*, 504 U.S. 980, 112 S.Ct. 2957, 119 L.Ed.2d 579 (1992).

▆▆▆ Claim construction is an issue of law, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1322 (Fed.Cir.1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review without deference, *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (*en banc*). A determination of infringement is a question of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir. 1998).

### III

Ecolab argues it is entitled to a new trial because the district court erroneously instructed the jury regarding claim interpretation. Specifically, Ecolab complains that Instruction No. 11 is erroneous because (1) it excluded the black matte surface and the vertical reflecting surface behind the bulb as qualifying "internal reflecting surface[s]," and (2) it required the "reflecting surface" to be located "on the inside wall of the housing cover."

### A. "Internal reflecting surface"

Ecolab asserts that the district court erred by instructing the jury that neither a "black matte surface" nor a vertical reflecting surface behind the bulb qualifies as an "internal reflecting surface." We first address whether Ecolab's failure to object to this portion of Instruction No. 11 at the jury instruction conference constituted a waiver or whether raising the issue at the Markman hearing was sufficient.

Ecolab fully briefed its position concerning the proper construction of "internal reflecting surface" in the claims at the Markman hearing. The district court rejected that interpretation as a matter of law in its Markman Order. Ecolab argues that it would have been futile to raise this argument a second time by objecting to the jury instruction incorporating the disputed claim construction, and equally futile to prepare and submit jury instructions in conflict with that Markman Order.

The requirements of Federal Rule of Civil Procedure 51 are governed by regional circuit law, in this case, the law of the Eighth Circuit. *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1350, 55 USPQ2d 1161, 1165 (Fed.Cir.2000). The question of whether there should be a "futility" exception to Rule 51 has been much discussed. In this particular area, the Eighth Circuit's view may diverge from that of other circuits.

▆▆▆ Rule 51 generally requires a party to object to an error in a jury instruction before the jury retires in order to preserve the claim of error on appeal, Fed. R.Civ.P. 51;[4] *City of Springfield v. Kibbe*, 480 U.S. 257, 258–60, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987), thereby giving the dis-

the district court's judgment as to infringement nonfinal. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199–203, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (holding that a judgment on the merits is final and appeal-able despite a pending motion for attorney's fees).

4. Federal Rule of Civil Procedure 51 states in pertinent part:

trict court the opportunity to recognize and correct any error it may have made in the instruction before charging the jury. But a general rule has evolved that "[a] litigant is excused from complying with the strict objection requirement of Rule 51 if the district court is aware of the party's position and it is plain that further objection would be futile," where "[the] litigant's position [was] 'clearly made' to the district court." 9 James Wm. Moore et al., *Moore's Federal Practice*, § 51.12[2][a], at 51–40.2 to 51–41 (3d ed.1997); *accord* 9A C. Wright & A. Miller, *Federal Practice and Procedure*, § 2553, at 441 (2d ed. 1986) ("The failure to object may be disregarded if the party's position has been made clear to the trial judge and it is plain that a further objection would be unavailing."). This is known as the "futility" exception.

For example, in *Dresser Industries, Inc. v. Gradall Co.*, 965 F.2d 1442, 1450 (7th Cir.1992), a party in a contract dispute did not object to a jury instruction defining a contract term but was nonetheless allowed to challenge the instruction on appeal, because the party had fully briefed the argument on summary judgment and the district court had rejected the same argument in denying summary judgment. *Id.* A further objection would have been "futile." *Id.* Similarly, in *Hamman v. Southwestern Gas Pipeline, Inc.*, 821 F.2d 299, 303, *vacated in part on other grounds on reh'g*, 832 F.2d 55 (5th Cir.1987), the Fifth Circuit held that a party had not waived its challenge to a jury instruction, where the party's position on the same legal issue had been clearly stated in the party's trial brief,

and had been rejected by the district court. Again, the court of appeals found that further objection would have been futile.

According to *Moore's Federal Practice*, "[f]ederal courts of appeal in all jurisdictions recognize this [futility] exception." 9 James Wm. Moore et al., *Moore's Federal Practice*, § 51.12[2][a], at 51–41 (3d ed.1997). This, however, may not be true in the Eighth Circuit. In *Starks v. Rent–A–Center*, 58 F.3d 358, 362 (8th Cir.1995), the court did not excuse a party's failure to object to a jury instruction, even though the trial judge repeatedly indicated that he preferred that counsel not repeat arguments already presented, because "[i]n this circuit, ... concern that the trial judge would prefer no objection or the view that the objection would be futile does not relieve the parties from making an objection to preserve errors for review." *See also Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.*, 83 F.3d 253, 256 (8th Cir. 1996) (citing and quoting *Starks*, 58 F.3d at 362). *Starks* is factually distinguishable from this case. In *Starks*, the court of appeals reviewed the record at length to demonstrate that the trial judge was open to reconsidering his earlier ruling. *Starks*, 58 F.3d at 362. We are nonetheless uncomfortable concluding that the Eighth Circuit would allow a futility exception in this case. However, we need not finally dispose of the futility issue since we conclude that even if the objections were properly preserved, there was no error in this portion of Instruction No. 11.

To determine whether there was error in this portion of the jury instruction, we

No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.
Fed.R.Civ.P. 51.

examine the district court's construction of the claim term "internal reflecting surface" as excluding both a "black matte surface" and a vertical surface behind the bulb.

### 1. Black matte surface

■ The section of Instruction No. 11 excluding a black matte surface from the scope of the term "internal reflecting surface"[5] was based on the district court's Markman ruling that "a black matte layer or surface inside the housing does not constitute a[sic] 'interior reflective surface' or an 'internal reflecting surface' within the meaning of the Ecolab patent claims." *Markman Order* at 21.

Ecolab argues that any surface of any color positioned inside the housing to reflect *any* degree of light onto the wall qualifies as an "internal reflecting surface." But Table 5 of the '690 patent makes it clear that not every black surface is an "internal reflecting surface." Table 5 outlines the results of an experiment "compar[ing] the effect of the installation of the shiny metallized polyester (Mylar) reflective surface within the housing with the effect of a non-reflecting surface." '690 patent, col. 7, ll. 48–64. The "non-reflecting surface" used in the experiment was black. Ecolab has not distinguished the black matte surface from the non-reflecting surface of Table 5. Moreover, if "a

surface that does reflect light from the source, even if only a small amount," is "reflective" within the meaning of claims 1 and 16, then no surfaces would be excluded and the term "reflective" would be meaningless. The district court concluded, and we agree, that because the term "internal reflecting surface" requires a surface having at least some small amount of reflectivity, the black matte surface on the inner wall of the housing cover (which is only minimally reflective) does not qualify. *Markman Order* at 11. We therefore find that the section of Instruction No. 11 excluding the black matte surface as an "internal reflecting surface" was not erroneous.

### 2. Vertical surface located behind the light source

■ The section of Instruction No. 11 excluding the "vertical surface[ ] on the rear wall of the housing ... positioned to reflect light out into a room"[6] was based on the district court's Markman ruling that:

the Ecolab patent claims do not include a vertical reflective surface which functions primarily to direct light outward into the room rather than upward onto the wall above the trap, and this is so even if some incidental illumination of the wall occurs.

*Markman Order* at 21. The district court read the plain language of the claims as

---

**5.** The district court instructed the jury that:
The terms "interior reflective surface" and "internal reflecting surface," used in the claims of the '690 patent, do not include a black matte surface inside the housing, that is, a black matte on the inner wall of the housing.

**6.** The district court instructed the jury in Instruction No. 11 that:
An internal reflecting surface which is "positioned with respect to the horizontal such that light from the source of the insect

attractant light is directed onto the vertical mounting surface" does not include vertical surfaces on the rear wall of the housing which are positioned to reflect light out into a room. Even if some "incidental" illumination of the wall results from a reflective surface on the rear wall of the housing, the claims do not include a vertical reflective surface which functions primarily to direct light outward into the room, rather than upward onto the wall above the trap.

requiring the "internal reflecting surface" to function primarily to reflect light upward onto the wall above the trap. *Id.* at 14. The district court based its interpretation on the prosecution history, where Ecolab distinguished the prior art on the ground that "[t]he prior art traps are optimized to direct light away from the trap into the room environment. The Stealth® brand trap of 'the claimed invention [in contrast] forms a light pattern, attractive to flying insects, on a vertical surface or wall above the trap." *Id.* at 15. The district court reasoned, and we agree, that "one of ordinary skill in the art would understand that an internal reflecting surface which is 'positioned with respect to the horizontal such that light from the source of insect attractant light is directed onto the vertical mounting surface' does not include vertical surfaces on the rear wall of housing which are positioned to reflect light out into the room." *Id.* The district court determined that the "vertical surface[ ] on the rear wall of the housing . . . positioned to reflect light out into a room" (*i.e.*, the "Mylar strip") of the Insect Inn IV trap reflects light outward into the room and away from the wall, rather than upward onto the wall as required by the claims. *Id.* at 15. Accordingly, the district court ruled that the Mylar strip cannot qualify as an "internal reflecting surface." We agree, and find that the section of Instruction No. 11 incorporating this claim construction was not erroneous.

### B. *Located on the inside wall of the housing cover*

Ecolab next challenges the section of Instruction No. 11 stating that "[t]he term 'reflected light' . . . means the light from the source which bounces off, *i.e.*, is reflected off, a reflecting surface on the inside wall of the housing cover:"

> "Direct light," as described in the patents, means light radiated directly from the source of the light onto the wall above the unit. The term "reflected light," as used in the patent claims, means the light from the source which bounces off, i.e. is reflected off, a reflecting surface on the inside wall of the housing cover.

Ecolab argues that this instruction improperly limited the scope of claims 1 and 16 of the patent to include only reflecting surfaces that are "located on the inside wall of the housing cover."

Unlike the claim construction issues discussed above, this issue was not addressed or decided at the pre-trial Markman hearing. Accordingly, whatever the vitality of the "futility" exception in the Eighth Circuit, Ecolab is bound by the strict requirements of Rule 51 and must have properly raised an objection to the district court in order to preserve the issue on appeal. Paraclipse urges that Ecolab failed to object to this section of Instruction No. 11 and propose alternative instructions, but Paraclipse is wrong. Ecolab properly objected after the court submitted its proposed jury instructions to the parties,[7] and proposed the following alternative language: " 'a reflecting surface in the trap, inside the trap' . . . [or] [i]nstead of saying in the trap, let's just use the exact language from the claim, 'a reflecting surface of the housing.' "

---

7. Ecolab pointed out that "this is the language, Your Honor, that we spoke about at the beginning of trial where they interpret it saying that the reflecting surface must only be on the inside wall of the housing cover. And that is the exact language of the court's *Mark-* *man* ruling, but as we pointed out, . . . if you read your Markman ruling . . . literally, that it had to be on the cover, then all the rest of Your Honor's language about what was and wasn't qualifying surfaces would be superfluous."

▇▇▇ An erroneous instruction regarding claim interpretation that affects the jury's decision on infringement is grounds for a new trial. A party seeking to alter a judgment based on erroneous jury instructions must establish that "those instructions were legally erroneous," and that "the errors had prejudicial effect." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1281, 54 USPQ2d 1673, 1679 (Fed.Cir.2000). Whether a jury instruction is legally erroneous is a question of law. *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1570, 24 USPQ2d 1401, 1411 (Fed.Cir.1992).

Because the pertinent language of claims 1 and 16 is different, we consider the correctness of Instruction No. 11 separately with respect to the two claims.[8]

### 1. Claim 1

▇▇▇ The jury instruction is correct as to claim 1. Ecolab argues that nothing in claim 1 limits the "internal reflecting surface" to a particular location "on the inside wall of the housing cover." We disagree. Claim 1 specifically requires that the "internal reflecting surface" be part "of the housing." '690 patent, col. 8, l. 62.

While the claim language is not as clear as it might be, we think that the term "housing" refers to the exterior walls, the cover, and the bottom wall, but not the elements contained "within" the housing.

Ecolab argues that the term "housing" can encompass "elements beyond the external walls ... shown in the preferred embodiment," because "claim 1 explicitly states that the housing also includes the insect immobilization surface, which is a separate element placed on top of the bottom wall." We disagree. The immobilization surface is not clearly a "separate element," because the specification states that the "adhesive surface rests upon a bottom portion ... which is a part of the housing." '690 patent, col. 8, ll. 24–26. This claim language does not persuade us that the term "housing" should be construed to encompass all elements contained within the housing. Rather, the term "housing" refers to the exterior walls, the cover, and the bottom wall.

▇▇▇ Ecolab also argues, to no avail, that the specification does not limit the reflecting surface to a particular location, relying on the following language:

> The reflection surface can be the exterior wall of the trap *or can be a surface installed within a vertical wall or a wall mounted at an angle other than the angle of the reflected surface.*

'690 patent, col. 5, ll. 48–51 (emphasis added). This language might be read to suggest that the reflecting surface may be separate from the housing cover in some embodiment of the invention. We nonetheless look first to the particular claim language to ascertain what that claim re-

---

8. Ecolab argues that "[i]t is improper to construe claims in such a way that they do not cover the admittedly infringing product from an earlier lawsuit between the same two parties," (citing *San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n*, 161 F.3d 1347, 1357–58, 48 USPQ2d 1865, 1873–74 (Fed.Cir.1998), *cert. denied*, 528 U.S. 959, 120 S.Ct. 394, 145 L.Ed.2d 306 (1999)) and that the Insect Inn II and IV traps are indistinguishable in this respect. There is no such rule, and *San Huan* does not support this proposition. Instead, San Huan was precluded from arguing for a claim construction because that claim construction was inconsistent with the construction it had already agreed to in a consent decree.

quires. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d ·1298, 1305, 51 USPQ2d 1161,· 1165 (Fed.Cir.1999) ("The starting point for any claim construction must be the claims themselves."). The specification does not suggest that we should construe claim 1 more broadly than its language suggests. ·

### 2. *Claim 16*

██ The jury instruction is erroneous as to claim 16. Claim 16 requires only that the "housing *contain[ ]* a surface . . . which reflects light." '690 patent, col. 10, ll. 16–18 (emphasis added). The ordinary meaning of "contain" is "to have within." *Webster's Third New Int'l Dict.*, 490–491 (1966). Thus, claim 16 does not require the reflecting surface to be located "on the inside wall of the housing cover."

██ However, to warrant a new trial, Ecolab must show that the erroneous jury instruction was in fact prejudicial. When the error in a jury instruction "could not have changed the result, the erroneous instruction is harmless." *Environ Prods., Inc. v. Furon Co.*, 215 F.3d 1261, 1266–67, 55 USPQ2d 1038, 1043 (Fed.Cir.2000) (citing 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2886, at 467–70 (2d ed. 1995) ("Errors in instructions are routinely ignored if . . . the error could not have changed the result.")); *Weinar v. Rollform Inc.*, 744 F.2d 797, 808, 223 USPQ 369, 376 (Fed.Cir. 1984) ("[A] reversal . . . is not available to an appellant who merely establishes error in instructions. . . . Where the procedural error was 'harmless,' *i.e.*, where the evidence in support of the verdict was so overwhelming that the same verdict would necessarily be reached absent the error, or the error was cured by an instruction, a new trial would be mere waste and affir-

mance of the judgment is required."), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985).

This requires us to examine whether there was sufficient evidence at trial to support a finding of infringement under a correct instruction. We must therefore determine whether Ecolab presented sufficient evidence to support a finding that the Insect Inn IV trap "contains" at least one "surface . . . which reflects light" as required by claim 16. Ecolab argues that six surfaces qualify: (1) the shiny black plate located directly beneath the light source; (2) the portion of the white paper supporting the adhesive layer that is not hidden by the reflecting plate; (3) the Mylar strip behind the light source; (4) the support posts for the bulb; (5) the outer surface of the light bulb; and (6) the black matte inner wall of the housing cover. To determine whether any of these surfaces might qualify as a "surface . . . which reflects light" we consider the limitations of claim 16.

### a. "One bounce"

██ We conclude that claim 16 includes a "one bounce" limitation, requiring the "surface . . . which reflects light" to reflect light *directly* onto the wall, rather than reflecting light onto another surface that reflects light onto the wall. Ecolab argues that "[n]othing in [the claim] language requires that light travel directly from the reflecting surface to the wall." But claim 16 explicitly requires "a surface . . . which reflects light from the source *onto* the vertical, planar surface . . . ." '690 patent, col. 10, ll. 17–19 (emphasis added). This suggests a requirement that the light bounce directly from the reflecting surface onto the wall above the trap. Moreover, the natural interpretation of the phrase

"surface ... which reflects" requires that light travel directly from the reflecting surface to the wall, and does not encompass a situation where the reflecting surface reflects light to another surface (such as the outer surface of the bulb), and then up onto the wall.

The district court similarly noted that "the term 'reflected light' as used in the patent claims means the light from the source which *bounces off ... the reflecting layer* on the inside wall of the housing cover." (emphasis added). *Markman Order* at 11. The district court correctly included this interpretation in the jury instruction:

> The term "reflected light," as used in the patent claims, means the light from the source which bounces off, *i.e.* is reflected off, a reflecting surface on the inside wall of the housing cover.

We believe that a jury could find that two surfaces meet this limitation: the shiny black plate located directly beneath the light source,[9] and the portion of the white paper supporting the adhesive layer that is not hidden by the reflecting plate. We need not address whether other surfaces, *i.e.* the Mylar strip, the support posts for the bulb, and the bulb itself, also meet this limitation.

### b. Threshold amount of light

■ Paraclipse urges that the instruction was not prejudicial because the claims require "at least five foot-candles of reflected light." Paraclipse contends that during reexamination, Ecolab tried to distinguish the White prior art as lacking a "reflected light intensity that is greater than the threshold for fly attraction," and

that this requirement was not shown to be satisfied. The district court rejected this argument, finding that "the Examiner did not consider the five foot-candle limitation to be a part of the invention, and so, the original claims must not now be 're-written' to incorporate the limitation in claim 25 regarding five foot-candles of reflected light on the wall." *Markman Order* at 20. We hold that the district court correctly concluded that "only claim 25, added during the reexamination proceedings, is limited to a threshold of five foot-candles of reflected light." *Id.* at 21.

### c. Ultraviolet light

■ Paraclipse also argues that the instruction was not prejudicial because claim 16 requires reflected ultraviolet ("UV") light, and that there was no showing that UV light was reflected. But Claim 16 does not require ultraviolet light. Only dependent claim 17 specifies "insect attractant light" as "ultraviolet." Claim 17 recites "[t]he trap of claim 16 wherein the insect attractant light comprises a source of ultraviolet light." '690 patent, Col. 10, ll. 21–22. Under the doctrine of claim differentiation, "each claim in a patent is presumptively different in scope." *Intermatic Inc. v. Lamson & Sessions Co.,* 273 F.3d 1355, 1364, 61 USPQ2d 1075, 1081–82 (Fed.Cir.2001). This presumption is especially strong where "there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two claims." *Id.* (quoting *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,* 239 F.3d 1225, 1233, 57 USPQ2d 1679, 1685 (Fed.Cir.2001)). Because the only meaningful difference be-

---

9. This shiny black reflector plate is clearly distinguishable from the non-reflective black matte surface discussed above on pages 11–12.

tween claims 16 and 17 is the limitation of ultraviolet light, under the doctrine of claim differentiation, claim 16 does not require ultraviolet light.

Because we find sufficient evidence to support a jury verdict of infringement under the correct interpretation of claim 16, we conclude that Ecolab suffered prejudice by the erroneous jury instruction. We therefore vacate the verdict of noninfringement as to claim 16, and remand for a new trial.

We also hold that the district court correctly denied Ecolab's motion for judgment as a matter of law on its patent infringement claim. Ecolab argues that it is entitled to judgment as a matter of law if we adopt Ecolab's proffered claim construction. Because we do not adopt Ecolab's proffered claim construction, there is no basis for us to grant judgment as a matter of law.

## IV

We next address Paraclipse's cross-appeal regarding the district court's decision barring Paraclipse from challenging the validity of the '690 patent. We find that the district court erred in precluding Paraclipse from asserting an invalidity defense, and hold that Paraclipse shall be allowed to challenge the validity of the '690 patent in the new trial.

 We interpret consent judgments in accordance with the general principles of contract law, *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352, 52 USPQ2d 1062, 1064 (Fed.Cir.1999), such that "the scope of a consent decree is limited to its terms and … its meaning should not be strained." *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 481, 20 USPQ2d

1241, 1250 (Fed.Cir.1991). Moreover, "provisions in a consent judgment asserted to preclude litigation of the issue of validity in connection with a new claim must be construed narrowly." *Id.; Diversey Lever*, 191 F.3d at 1352, 52 U.S.P.Q.2d 1062 ("Any surrender of the right to challenge validity of a patent is construed narrowly."). Thus, a party does not waive its right to challenge the validity of a patent as to future accused products absent a clear intent to do so. To determine whether to give the consent judgment in this case preclusive effect, we therefore turn to the language of the agreement itself.

 In *Foster*, we found that the alleged infringer was not precluded from challenging the validity of the patent where the consent decree merely stated that the patents were "valid and enforceable in all respects." *Foster*, 947 F.2d at 481, 20 USPQ2d at 1250. We found that that language standing alone was insufficient to bar the alleged infringer from challenging validity. In that situation, a future validity challenge would have been precluded only if the devices in the two suits were "essentially the same," that is, if the accused product in the second suit was "essentially the same" as the specific device that was before the court in the first suit. *Foster*, 947 F.2d at 479–480, 20 USPQ2d at 1249.

In *Diversey Lever*, we found that the language standing alone in the agreement at issue was sufficient to bar the alleged infringer from challenging validity, where the alleged infringer, in addition to agreeing that the patents were "valid and enforceable," further agreed that it would not "directly or indirectly aid, assign, or participate in any action contesting the validity" of the patents. *Diversey Lever*, 191 F.3d at 1352, 52 USPQ2d at 1064. We

noted that "*Foster* requires more for a waiver of the invalidity defense as to future accused products," *id.*, and found the "something more" in this additional language.

■ Here, the consent judgment is more analogous to the agreement in *Foster* than *Diversey Lever*. Paraclipse merely agreed in the consent judgment that "the '690 patent is a valid patent." Greater clarity than this is required to foreclose a validity defense in a new infringement suit involving a new product. Because the language of the consent judgment does not, standing alone, preclude the validity challenge, we must determine whether the products are "essentially the same." The record shows that the Insect Inn IV trap differs from the Insect Inn II trap in that (1) it lacks a reflector located between the bulb and the outer wall of the housing, (2) the inside of the outer walls of the housing are black in color, and (3) it has two elements that were not present in the Insect Inn II trap: a shiny black reflector plate immediately below the light bulb and a Mylar strip on the vertical back wall of the housing. Thus, the record demonstrates to our satisfaction that the Insect Inn II and IV devices are not "essentially the same."

Relying on *Foster*, Ecolab argues that even if the language of the decree standing alone is insufficient to preclude an invalidity defense, it is entitled to introduce extrinsic evidence as to the parties' intent. Without determining under what circumstances a district court may look beyond the language of the agreement to extrinsic evidence of intent, we find that in this case, the extrinsic evidence offered by Ecolab did not raise a genuine issue of material fact as to whether the agreement should be interpreted to preclude the in-validity defense. Ecolab argues that it presented "powerful" extrinsic evidence showing that Paraclipse understood the consent judgment to have preclusive effect, but points only to Paraclipse's belated assertion of its invalidity defense as its extrinsic evidence. This is hardly sufficient.

■ Finally, Paraclipse argues that the district court improperly barred it from showing that the Insect Inn IV trap cannot infringe because its Insect Inn IV trap more closely resembles the expired White prior art patent than the '690 patent. Specifically, Paraclipse argues that "[e]ach one of those same surfaces of the Insect Inn IV relied on by Ecolab as constituting the claimed 'reflective' surface is likewise found in the White prior art unit." But "practicing the prior art" is not a defense to literal infringement. *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583, 34 USPQ2d 1120, 1126 (Fed.Cir. 1995), *cert. denied*, 516 U.S. 906, 116 S.Ct. 272, 133 L.Ed.2d 194 (1995); *see also Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365, 61 USPQ2d 1647, 1653 (Fed.Cir.2002). Instead, "[q]uestions of obviousness in light of the prior art go to validity of the claims, not whether an accused device infringes." *Baxter*, 49 F.3d at 1583, 34 USPQ2d at 1126. Thus, Paraclipse cannot properly assert as a noninfringement defense that "[i]f the claims read on Insect Inn IV, they must also read on the prior art."

In sum, the district court erred in precluding Paraclipse from challenging the validity of the '690 patent with respect to Paraclipse's new product, the Insect Inn IV trap.

## CONCLUSION

We find that the district court correctly interpreted the claims and gave a correct

jury instruction as to claim 1, but incorrectly interpreted the claims, in part, and gave an erroneous jury instruction as to claim 16. We accordingly affirm the verdict of noninfringement as to claim 1, and vacate the verdict of noninfringement as to claim 16, and remand for a new trial. We further hold that at the new trial, Paraclipse shall be allowed to challenge the validity of the '690 patent.

Therefore, we affirm-in-part, reverse-in-part, and remand for new trial as to claim 16.

*AFFIRMED–IN–PART, REVERSED–IN–PART,* and *REMANDED.*