_____

No. 95-1268
No. 95-1383
_____

Jones Truck Lines, Inc.,                *
                                         *
     Plaintiff - Appellee/               *
     Cross-Appellant,                    *
                                         *
                                         *  Appeals from the United States
     v.                                  *  District Court for the
                                         *  Western District of Arkansas.
Full Service Leasing                     *
Corporation,                             *
                                         *
     Defendant - Appellant/              *
     Cross-Appellee.                     *

_____

          Submitted:  November 16, 1995

             Filed:  May 9, 1996
_____

Before McMILLIAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

     Jones Truck Lines, Inc. ("Jones"), a bankrupt common carrier, sues
to recover as preferences three payments made to its truck and trailer
lessor, Full Service Leasing Corporation ("FSLC"), during the ninety-day
period preceding Jones's bankruptcy.  A jury found that only the third
payment was preferential, and both parties appeal, raising issues of
insolvency, "ordinary course of business," and "new value" under the
preferential transfer provision of the Bankruptcy Code, 11 U.S.C. § 547.
Concluding that the district court[1] properly instructed the jury on these
issues, and that the jury's verdict is unassailable, we affirm.

_____

     [1]  The HONORABLE H. FRANKLIN WATERS, Chief Judge of the United
States District Court for the Western District of Arkansas.

## I.  Background.

On May 1, 1990, FSLC began renting trucks and trailers to Jones under a five-year Master Lease Agreement.  The Agreement provided for monthly unsecured rental payments based upon the amount of equipment under lease. It also provided that, if Jones failed to make timely rental payments, FSLC could declare a default, terminate the Agreement, and repossess leased equipment.

Jones encountered financial difficulties in late 1990 and began delaying payment of some invoices.  Jones continued making monthly lease payments to FSLC within one week of the due dates, however, suspecting that FSLC would not tolerate late payments.  By early 1991, Jones's financial woes had worsened, and it began delaying rent payments to FSLC.  On March 5, FSLC contacted Jones and demanded immediate delivery of all payments due.  Jones sought permission to make lease payments sixty days late, but FSLC refused.  Jones subsequently made three late payments to FSLC within ninety days of filing for bankruptcy on July 9, 1991:

| AMOUNT PAID | DATE DUE | DATE PAID |
|---|---|---|
| $162,498.00 | 3/ 1/91 | 4/15/91 |
| $133,350.00 | 3/18/91 | 5/17/91 |
| $147,420.72 | 4/ 1/91 | 6/ 4/91 |

In this lawsuit, Jones as debtor-in-possession seeks to recover those payments as avoidable preferences under § 547.  "A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate."  H.R. No. 595, 95th Cong., 1st Sess. 177, 178 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6138.  Jones made the three payments within the ninety-day preference period defined in § 547(b)(4)(A). However, FSLC argues that the payments were not avoidable preferences because (i) Jones was not "insolvent" when

each transfer was made, § 547(b)(3); (ii) the transfers were made in the ordinary course of business, § 547(c)(2); and (iii) FSLC gave Jones "new value" following each transfer, § 547(c)(4).[2]

At trial, the district court determined that these are issues of fact, denied each party's pre-verdict motions for judgment as a matter of law (JMAL), and instructed the jury on insolvency, ordinary course of business, and new value. The jury found (i) that Jones was solvent when it made the first payment but insolvent when it made the second and third; (ii) that the second payment was made in the "ordinary course of business"

---

[2]Section 547 is a lengthy statute. The provisions at issue on this appeal are:

**§ 547(a)(2):** In this section -- "new value" means money or money's worth in goods, services, or new credit . . . but does not include an obligation substituted for an existing obligation[.]

**§ 547(b):** Except as provided in subsection (c), the trustee may avoid any transfer of an interest of the debtor in property . . . (3) made while the debtor was insolvent [and] (4) made on or within 90 days before the date of the filing of the petition . . .

**§ 547(c):** The trustee may not avoid under this section a transfer --

(2) to the extent that such transfer was --

   (A) in payment of a debt incurred by the debtor in the ordinary course of business . . .

   (B) made in the ordinary course of business . . . of the debtor and the transferee, and

   (C) made according to ordinary business terms;

*    *    *    *    *

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor . . .

-3-

but the third payment was not; and (iii) that FSLC did not give new value for the three

payments.  Consistent with this verdict, the district court entered judgment for Jones in the amount of the third payment, $147,420.72, plus prejudgment interest.  Both parties appeal.  FSLC argues that the third payment was not preferential because it was made in the "ordinary course of business" or for "new value."  Jones argues that it made the first payment while insolvent.

## II.  Jury Instruction Issues.

FSLC argues that the district court erred in giving an "ordinary course of business" instruction that directed the jury to consider, to the exclusion of other factors, the course of dealing between FSLC and Jones. FSLC further argues that the district court erred in instructing the jury on "new value" because the instruction (i) did not state that a lessee's continued use of leased equipment can be "new value" for late rental payments, and (ii) placed too much emphasis on the policy underlying preference avoidance -- equal treatment of a bankrupt's creditors.

**A. Failure to Object.**  The first problem is that these issues were not properly preserved.  Before closing arguments, the district court distributed its proposed jury instructions and reminded counsel to state any objections before the jury retired to deliberate, as Fed. R. Civ. P. 51 requires.  Though the court repeated that reminder after instructing the jury, FSLC made no specific objections; instead, FSLC objected "[t]o the extent that these instructions vary from" FSLC's proposed instructions.

Rule 51 requires specific objections before the jury retires so that the district court may correct errors, thereby avoiding the need for a new trial.  See Barton v. Columbia Mut. Casualty Ins. Co., 930 F.2d 1337, 1341 (8th Cir. 1991).  Objections must "bring into focus the precise nature of the alleged error."  Palmer v. Hoffman, 318 U.S. 109, 119 (1943).  "The mere tender of an alternative instruction without objecting to some specific error in

the trial court's charge or explaining why the proffered instruction better states the law does not preserve the error for appeal." Johnson v. Houser, 704 F.2d 1049, 1051 (8th Cir. 1983).

FSLC explains that it did not make specific objections because the district court was aware of FSLC's position and did not want counsel arguing the instructions. "In this circuit, however, concern that the trial judge would prefer no objection or the view that the objection would be futile does not relieve parties from making an objection to preserve errors for review." Starks v. Rent-A-Center, 58 F.3d 358, 362 (8th Cir. 1995). Moreover, the district court repeatedly invited FSLC to make a proper record, and it failed to do so. Consequently, we review the instructions only for plain error, that is, whether an error "has seriously affected the fairness, integrity, or public reputation of the judicial proceedings." Rolscreen Co. v. Pella Prods., Inc., 64 F.3d 1202, 1211 (8th Cir. 1995) (quotation omitted).

**B. No Plain Error.** The district court's "ordinary course of business" instruction was not error, let alone plain error. The instruction separately explained the three subparts of § 547(c)(2). In explaining § 547(c)(2)(B), the court focused on the relationship between FSLC and Jones, consistent with both the statutory language and our decision in Lovett v. St. Johnsbury Trucking, 931 F.2d 494 (8th Cir. 1991). Thus, FSLC's contention that the court should have focused the jury's attention on Jones's late payments to other creditors and on FSLC's acceptance of late payments from other debtors is wrong. Moreover, in instructing the jury on the phrase "ordinary business terms" in § 547(c)(2)(C), the court broadened the jury's focus to include "standards prevailing in the industry," consistent with our decision in In re U.S.A. Inns of Eureka Springs, Ark., Inc., 9 F.3d 680, 684 (8th Cir. 1993).

Likewise, the district court's "new value" instruction was not error, let alone plain error. FSLC complains because the jury was

not told to consider the benefit conferred by Jones's continued use of the leased equipment, and because the instruction overemphasized the purpose of the preference statute and did not explain that this preference defense is intended to encourage creditors to work with troubled businesses. However, the unchallenged instruction included the statutory definition of "new value" in § 547(a)(2), and it accurately paraphrased § 547(c)(4). This left FSLC free to argue its theory that Jones's continued use of the leased equipment after making late rental payments constituted "new value." The instruction went on to accurately summarize the policies underlying § 547 preferences.[3] While the court might also have explained that § 547(c)(4) is intended to encourage creditors to work with troubled companies, as we said in In re Kroh Bros. Dev. Co., 930 F.2d 648, 651 (8th Cir. 1991), that omission is not plain error. Finally, the instruction directed the jury's attention to the central inquiry in the "new value" analysis by concluding, "[i]f a creditor advances new value to the debtor, the debtor's assets have not been depleted to the disadvantage of other creditors." See Kroh Bros., 930 F.2d at 652.

### III. Sufficiency of the "Ordinary Course" Evidence.

FSLC argues that there was insufficient evidence that the third payment was not made in the "ordinary course of business" under § 547(c)(2). We review the evidence in the light most favorable to the jury's verdict, Nicks v. Missouri, 67 F.3d 699, 704 (8th Cir. 1995), and affirm unless "all of the evidence points one way" and is susceptible of no reasonable inference sustaining

---

[3]In permitting the bankruptcy estate to recover preferential transfers, Congress intended to discourage creditors "from racing to the courthouse to dismember the debtor during his slide into bankruptcy," and, more importantly, to further "the prime bankruptcy policy of equality of distribution among creditors." H.R. No. 595, 1978 U.S.C.C.A.N. at 6138.

the jury's determination.  <u>McKnight v. Johnson Controls, Inc.</u>, 36 F.3d 1396, 1400 (8th Cir. 1994).

FSLC had the burden of proving that the third payment was made (i) in the ordinary course of the parties' business and (ii) according to ordinary business terms.  <u>U.S.A. Inns</u>, 9 F.3d at 682.  From May to December 1990, Jones consistently paid rent to FSLC in the week payment was due under the Master Lease Agreement.  As its financial situation worsened, Jones began to delay those rental payments; the third payment was sixty days late.  Thus, unlike the creditor in <u>Lovett</u>, 931 F.2d at 498-99, FSLC could not show that consistently late payments were part of the parties' usual course of dealing.  There was ample evidence supporting the jury's contrary finding.

## IV. A Second "New Value" Issue.

FSLC also argues that "the record demonstrates that FSLC extended new value."  It supports this argument with a lengthy discourse on whether allowing Jones to continue using the leased equipment in exchange for the three late payments was a form of forbearance, and if so, whether such forbearance may constitute "new value" under § 547(c)(4).  The difficulty with FSLC's argument is that these interesting issues are not properly before us.

At the close of Jones's evidence, and again at the close of all the evidence, FSLC moved for JMAL on the issue of "ordinary course of business," but not on the issue of "new value."  In denying FSLC's post-verdict motion, the district court carefully described that motion as seeking, with respect to the third payment, JMAL on the ordinary course issue, but only a new trial on the new value issue.  A party that does not seek JMAL on an issue before the jury retires may not raise the JMAL issue following the jury's verdict *or on appeal*.  <u>See</u> Fed. R. Civ. P. 50(b); <u>Pulla v. Amoco Oil Co.</u>, 72 F.3d 648, 655 (8th Cir. 1995).  Thus, we may not

consider whether FSLC's evidence established as a matter of law that FSLC provided Jones "new value."

The district court properly treated "new value" as a question of fact.  See In re Lewellyn & Co., 929 F.2d 424, 427 (8th Cir. 1991).  FSLC timely filed a motion for new trial to set aside the jury's adverse verdict on that issue.  However, the district court's denial of a motion for new trial on the ground that a jury verdict is against the great weight of the evidence is "virtually unassailable on appeal."  Barnes v. Parker, 972 F.2d 978, 979 (8th Cir. 1992) (quotation omitted); see White v. Pence, 961 F.2d 776, 780-82 (8th Cir. 1992).  Regarding this factual issue, "[t]he availability of the [new value] defense depends on the ultimate effect on the [bankruptcy] estate" of the alleged new value.  Kroh Bros., 930 F.2d at 654.  There was conflicting evidence on this issue, and FSLC had the burden of proof.  Therefore, the district court's denial of FSLC's motion for new trial must be affirmed.

## V. Sufficiency of the Solvency Evidence.

On its cross appeal, Jones argues insufficient evidence that Jones was solvent when it made the first payment on April 15, 1991.  The district court properly instructed the jury (i) that a debtor is *in*solvent if the sum of its debts is greater than all of its property, fairly valued, see 11 U.S.C. § 101(32), and (ii) that Jones's assets "should be valued as an active unit" if Jones was a going concern at the time of an alleged preferential transfer, see In re Taxman Clothing Co., 905 F.2d 166, 170 (7th Cir. 1990).

There was ample evidence that Jones was a going concern on April 15, 1991, despite its financial troubles.  Jones continued to operate, its officers were optimistic, and its managers and lenders continued to invest in the business.  A balance sheet prepared for the fiscal year ending March 30, 1991, reported that Jones's assets exceeded its liabilities by $14,341,859 on a going concern basis.

This balance sheet was distributed to Jones's management, lenders, and auditors. Though a debtor is presumed insolvent during the preference period, see 11 U.S.C. § 547(f), if the creditor produces evidence of solvency, the debtor has the ultimate burden of proof. Clay v. Traders Bank, 708 F.2d 1347, 1351 (8th Cir. 1983). A financial statement showing positive net worth is sufficient to rebut the presumption of insolvency. In re Almarc Mfg., Inc., 60 B.R. 584, 586 (Bankr. N.D. Ill. 1986). Thus, Jones's March 30 balance sheet shifted the burden to Jones to prove that it was insolvent two weeks later.

The jury could rationally conclude that Jones did not meet this burden. Rather than present evidence of a negative going concern value on April 15, Jones relied on post-bankruptcy liquidation values of assets later sold by a broker. Jones also attacked its own financial statement, challenging the reported $13,709,653 in equity because a planned conversion of debt to preferred stock never occurred, and arguing that liabilities were understated because a substantial liability contingent on Jones's withdrawal from the Teamsters Union Central States Pension Fund was not included. We are inclined to agree with FSLC that Jones's evidence on this issue was contrary to the principles of going concern valuation. But more to the point, the evidence on the question of insolvency was conflicting, and the jury was not required to credit Jones's evidence, or to find that Jones had met its burden of proof. See Braunstein v. Massachusetts Bank & Trust Co., 443 F.2d 1281, 1284 (1st Cir. 1971).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-