_____

No. 95-3832
_____

Southern Technical College,          *
Inc.,                                *
                                     *
          Appellant,                 *
                                     *  Appeals from the United States
     v.                              *  District Court for the
                                     *  Eastern District of Arkansas.
James W. Hood,                       *
                                     *
          Appellee.                  *

_____

No. 95-3833
_____

Southern Technical College,          *
Inc.,                                *
                                     *
          Appellant,                 *
                                     *
     v.                              *
                                     *
Graham Properties Partnership,       *
                                     *
          Appellee.                  *

_____

            Submitted:  April 10, 1996

               Filed:  July 25, 1996
_____

Before BOWMAN, BEAM, and MURPHY, Circuit Judges.
_____

BOWMAN, Circuit Judge.

     Southern Technical College (STC) filed a voluntary petition for
bankruptcy reorganization on April 28, 1992.  These appeals arise out of
adversary proceedings conducted in the context of the Chapter 11 bankruptcy
proceedings.  STC leased nonresidential real property from both Graham
Properties Partnership and James W. Hood.

STC did not make its February 1992 rent payments on these properties until March 1992. STC claims that it is entitled to recover the $16,900.67 late-rent payment to Graham and the $19,530 late-rent payment to Hood as avoidable preferential transfers under 11 U.S.C. § 547(b) (1994). The Bankruptcy Court[1] disagreed, concluding that while the transfers from STC to Graham and Hood were preferential transfers, STC could not recover them because they fell within the subsequent-advance-of-new-value exception, 11 U.S.C. § 547(c)(4). The District Court[2] affirmed the grants of summary judgment by the Bankruptcy Court, and STC timely appeals. We have jurisdiction over these appeals pursuant to 28 U.S.C. § 158(d) (1994), and we affirm the judgments of the District Court.

In August 1987, STC began leasing property from Graham in Monroe, Louisiana. STC paid a security deposit of $11,846. After April 1989, the monthly lease payments were $16,900.67. STC consistently made its payments during the first week of each month until January 1992, when Graham received the January 1992 check on January 17, 1992. The February check, which is the subject of the litigation between STC and Graham, was dated February 28, 1992, and not received by Graham until March 2, 1992. STC failed to pay any rent for March or April 1992.

In May 1987, STC began leasing property from Wally Caldwell in Jackson, Mississippi, for $19,530 per month. STC also paid a security deposit of $19,530. Caldwell later assigned the lease to Hood. STC typically made its monthly payments to Hood during the first week of each month. The February 1992 check, which is the subject of the litigation between STC and Hood, was not received by

---

[1]The Honorable Mary Davies Scott, United States Bankruptcy Judge for the Eastern District of Arkansas.

[2]The Honorable Stephen M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas.

Hood until March 2, 1992.  STC failed to pay any rent for March or April 1992.

The Bankruptcy Court held that the two late-rent payments were preferential transfers within the meaning of § 547(b), and that conclusion is not challenged in these appeals.  The Bankruptcy Court also held that STC received subsequent new value from Graham and Hood in exchange for the late-rent payments, and thus STC could not recover those payments despite the fact that they were preferential transfers.  STC now argues that the Bankruptcy Court and the District Court erred when they held that Graham and Hood provided STC with new value after Graham and Hood received the preferential transfers.

In bankruptcy cases, this court sits as a second court of review and applies the same standards as the district court.  United States v. Roso (In re Roso), 76 F.3d 179, 181 (8th Cir. 1996).  "We review de novo the granting of a summary judgment motion."  Maitland v. University of Minn., 43 F.3d 357, 360 (8th Cir. 1994).  If the record shows that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment.  Id.; see also Fed. R. Civ. P. 56(c).

STC argues that it received no new value within the meaning of § 547(c)(4) after its late-rent payments.  The Bankruptcy Court held that STC's continued use of the properties during March and April, without the payment of rent, constituted subsequent new value.                    Section 547, in pertinent part, provides as follows:

> (c) The trustee may not avoid under this section a transfer --
>         . . . .
>         (4) to or for the benefit of a creditor, to the
>         extent that, after such transfer, such creditor
>         gave new value to or for the benefit of the debtor
>         --

   (A) not secured by an otherwise unavoidable  security
interest; and
   (B) on account of which new value the debtor did not
make  an  otherwise  unavoidable  transfer  to  or  for  the
benefit of such creditor . . . .

The statute defines new value as "money or money's worth in goods, services, or new credit . . . ." 11 U.S.C. § 547(a)(2).  Section 547(c)(4) thus modifies the general rule that preferential transfers may be recovered by creating an exception for situations in which a creditor provides new value after the preferential transfer is made but before the filing of the debtor's bankruptcy petition.  The giving of new value alone is not sufficient for this exception to apply.  The debtor must not have paid for the new value by making "an otherwise unavoidable transfer to or for the benefit of the creditor."  Id. § 547(c)(4)(B).  Additionally, the new value cannot be secured by "an otherwise unavoidable security interest."  Id. § 547(c)(4)(A).  In this case, it is undisputed that STC has not paid for any new value that Graham and Hood have extended, but STC argues that its security deposits constitute an unavoidable security interest.  Such an interest could make § 547(c)(4) inapplicable to all or part of the preferential transfers at issue.  The first step in our inquiry, however, is to determine whether the rent-free use of the Graham and Hood properties constitutes new value.

 The purpose of § 547(c)(4) is "to encourage creditors to deal with troubled businesses in the hope of rehabilitation."  Kroh Bros. Dev. Co. v. Continental Constr. Eng'rs, Inc. (In re Kroh Bros. Dev. Co.), 930 F.2d 648, 651 (8th Cir. 1991).  As the Eleventh Circuit has noted, "[a] subsequent advance [of new value] is excepted because . . . a creditor who contributes new value in return for payments from the incipient bankrupt . . . should not later be deemed to have depleted the bankruptcy estate to the disadvantage of other creditors."  Charisma Inv. Co. v. Airport Sys., Inc., (In re Jet Fla. Sys., Inc.), 841 F.2d 1082, 1083 (11th

Cir. 1988) (per curiam). "Thus, the relevant inquiry under section 547(c)(4) is whether the new value replenishes the estate." Kroh Bros., 930 F.2d at 652.

STC argues that § 547(c)(4) does not apply to the late-rent payments because under the terms of STC's leases with Graham and Hood it had the right to occupy the properties in March and April even though it had not paid rent. Graham and Hood, in response, contend that STC's argument misses the point. According to Graham and Hood, STC's right to remain in possession of the property is irrelevant. Instead, they argue that STC's actual use of the property for almost two months without paying any rent should be the focus of the § 547(c)(4) inquiry. They contend that by using the leased properties during March and April, STC received new value for which it did not pay.

We are persuaded by the arguments advanced by Graham and Hood. Each month, a lessee receives new value from its lessor when it continues to use and occupy the rented property. STC does not and could not dispute the fact that the continued use of the two leased premises enabled it to continue operations in Monroe, Louisiana, and Jackson, Mississippi, during March and April 1992. Graham and Hood did not provide STC with money, but they certainly provided STC with "money's worth." This new value, two rent-free months, facilitated STC's continued operation. The income generated thereby replenished the estate, increased STC's chances of survival, and benefitted all of STC's creditors. As the two rent-free months have not been paid for by STC, we conclude that Graham and Hood fit within the subsequent-advance exception of § 547(c)(4) and therefore STC cannot avoid the preferential transfers it made to them.

Our decision is supported by the Eleventh Circuit's decision in the somewhat factually similar case of In re Jet Florida System, Inc., 841 F.2d 1082 (11th Cir. 1988). In that case the court of

-5-

appeals held that the lessee-debtor had not received new value, but only because the bankruptcy court found that the lessee-debtor "had made no use of the rental property throughout the preference period." Id. at 1084. The court's reasoning, however, leads to the inescapable conclusion that continued use of leased property can constitute new value. The subsequent-advance exception promotes the preference policies of the Bankruptcy Code "because its utility is limited to the extent to which the estate was enhanced by the creditor's subsequent advances during the preference period." Id. at 1083-84 (quoting 4 Collier on Bankruptcy, ¶ 547.12, at 547-49 n.5 (15th ed. 1987)). The court explained that

> courts have generally required a transfer which fits within the subsequent advance exception to provide the debtor with a material benefit. This focus upon whether a material benefit has been conferred has been explained in terms of insulating a preferential transfer to a particular creditor to the extent that that creditor thereafter replenishes the estate. In such a situation, the creditor pool would not be harmed to the extent of the offset and the fundamental goal of equality of distribution would be preserved.

Id. at 1084 (citations omitted). We think the present case presents just such a situation. Graham and Hood provided STC with the leased properties after the preferential transfer and before the filing of the bankruptcy petition. STC did not pay for the use of the properties. The rent-free use of the properties conferred a material benefit on STC: the ability to continue operations on and generate income from the leased properties between the date of the preferential transfer and the filing of the bankruptcy petition. Thus Graham and Hood replenished the bankruptcy estate by giving STC rent-free use of the leased properties. Accordingly, we hold that STC may not avoid the preferential transfer to the extent that the new value--nearly two rent-free months--remains unpaid for and unsecured. See 11 U.S.C. § 547(c)(4). STC clearly

derived a material benefit from the new value advanced by Graham and Hood.

Even though we have concluded that Graham and Hood provided new value to STC, our inquiry is not at an end. In order to fit within the exception carved out by § 547(c)(4), a preferential transfer must be both unpaid for and unsecured. In this part of the opinion, we address the Graham and Hood properties separately. In each case, if the new value conferred upon STC by the lessor, consisting of close to two months of free rent, exceeded the amount of the February-rent payment plus the security deposit,[3] then the amount of the February-rent payment is not recoverable as a preference.

With respect to the property leased from Graham, STC argues that the new value provided by Graham does not exceed the amount of the security deposit held by Graham plus the amount of the preferential transfer. When STC entered into the lease agreement with Graham, STC paid Graham a security deposit of $11,846. In March and April 1992, the monthly rent payment was $16,900.67, and the Bankruptcy Court did not clearly err when it used this figure as the basis for its calculation of new value. Graham received the preferential payment at issue on March 2, 1992, and STC filed its bankruptcy petition on April 28, 1992. Only new value that was extended between these two dates may be considered for purposes of § 547(c)(4). Thus the new value provided is equal to 29/31 of the rent due for March plus 28/30 of the rent due for April, which in turn equals $31,584.86. This amount exceeds the amount of the preferential transfer plus the security deposit, $28,745.67 ($16,900.67 plus $11,846). Thus the Bankruptcy Court correctly concluded that STC could not avoid any part of the preferential transfer to Graham.

---

[3]It is undisputed that the security deposits paid by STC constitute unavoidable security interests under § 547(c)(4)(A).

STC makes the same argument with respect to the property leased from Hood. STC argues that it may recover a portion of the preferential transfer to Hood because the new value provided does not exceed the amount of the preferential payment plus the security deposit. STC, however, failed to make this argument to the Bankruptcy Court.[4] Rather, STC made the all-or-nothing argument that the new value was secured by the security deposits and that the statute did not differentiate between secured and undersecured new value; thus, according to STC, the entire amount of any new value received was secured and the preferential transfers did not fall within the subsequent-advance exception. Memorandum Brief in Support of Response to Defendant's Motion for Summary Judgment at 9-10, STC v. Hood (In re STC), No. 94-4063 (Bankr. E.D. Ark. March 8, 1995) (brief filed). The argument advanced by STC in this Court was raised for the first time on appeal to the District Court and is not properly before us. We therefore decline to consider it. See Abbott Bank-Thedford v. Hanna (In re Hanna), 912 F.2d 945, 948 (8th Cir. 1990).

In sum, we hold that the Bankruptcy Court properly concluded as a matter of law that STC could not avoid the preferential transfers to Graham and Hood because the undisputed material facts established that the STC received unsecured new value for which it had not paid. We therefore affirm the judgments of the District Court affirming the judgments of the Bankruptcy Court.

---

[4]In the litigation with Graham in the Bankruptcy Court, STC raised the argument that the new value did not exceed the sum of the late rent and the security deposit during the proceedings on Graham's motion to amend or alter the judgment. Throughout those proceedings, a summary judgment motion was pending in the litigation with Hood. The Bankruptcy Court granted summary judgment in favor of Hood only after it had already decided the issue of whether the new value given by Graham exceeded the amount of the security deposit plus the amount of the preferential transfer, and STC had not raised the issue in its briefs in opposition to Hood's motion for summary judgment. The procedural differences between these two cases account for STC's failure to raise the issue in one case but not the other.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.