**In re BRIDGE INFORMATION SYSTEMS, INC., et al., Debtors.**

**Scott P. Peltz, as Chapter 11 Plan Administrator for BIS Administration, Inc., f/k/a Bridge Information Systems, Inc., et al., Plaintiff,**

v.

**Application Engineering Group, Inc., Defendant.**

**Bankruptcy No. 01–41593–293. Adversary No. 02–4216–293.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Dec. 23, 2002.

Gregory D. Willard, St. Louis, MO, Thomas J. Moloney, Deborah M. Buell, Deborah S. Whang, Sean A. O'Neal, David H. Herrington, New York City, Cynthia A. Fonner, Foley and Lardner, Chicago, IL, for Debtors.

Peter Lumaghi, Office of U.S. Trustee, St. Louis, MO, U.S. Trustee.

### MEMORANDUM OPINION

DAVID P. MCDONALD, Chief Judge.

Scott Peltz, Plan Administrator for Reorganized Debtors ("Plan Administrator") [1]

---

**1.** Pursuant to Debtors' Joint Plan of Liqui- dation, confirmed by this Court on February

, brought the instant adversary against Application Engineering Group ("Application") seeking to recover payments Debtors made to Application totaling $144,665.00 as preferential transfers under 11 U.S.C. § 547(b). Application does not contend that the payments were not preferential, but rather argues that the transfers are not avoidable under either the "ordinary course of business" or the "subsequent new value" defense contained in 11 U.S.C. §§ 547(c)(2) and 547(c)(4) respectively.

Because Application failed to demonstrate that Debtors made the payments in the ordinary course of the business and financial affairs of Debtors and Application, it may not rely on § 547(c)(2). However, because Application did provide new value to Debtors subsequent to some of the preferential payments in the amount of $44,665.00 and Debtors did not make an "otherwise unavoidable transfer" to Application because of such new value, Plan Administrator may not avoid the payments to the extent of the $44,665 of new value under § 547(c)(4). Accordingly, the Court will enter judgment in favor of Plan Administrator in the amount of $100,000.00.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts in this case are undisputed. Debtors and Application entered into an agreement in December 1999 whereby Application agreed to provide information technology consulting services to Debtors (the "Agreement"). Under the terms of the Agreement, Application agreed to invoice Debtors bi-weekly and Debtors' payments on the invoices were due net 30 days of the invoice date.

Debtors filed their respective petitions for relief under Chapter 11 of the United States Bankruptcy Code on February 15, 2001. Thus, the ninety day preference period under § 547(b)(4)(A) is November 15, 2000 through February 15, 2001 (the "Preference Period").

From the date of the first invoice, February 17, 2000, through the beginning of the preference period (the "Pre–Preference Period"), Application and Debtors stipulated that Debtors made the following 16 payments to Application:

**TABLE 1**

| Invoice Number | Invoice Date | Invoice Amount | Date Check Delivered | Days Paid from Invoice Date |
|---|---|---|---|---|
| 20000251 | 2/17/00 | $ 8,800 | 5/1/00 | 74 |
| 20000352 | 2/28/00 | $ 8,360 | 5/5/00 | 67 |
| 20000372 | 3/13/00 | $ 8,800 | 5/18/00 | 66 |
| 20000389 | 3/27/00 | $ 8,880 | 6/1/00 | 66 |
| 20000453 | 4/10/00 | $12,320 | 6/8/00 | 59 |
| 20000465 | 4/24/00 | $ 8,360 | 6/1/00 | 38 |
| 20000484 | 5/8/00 | $ 6,270 | 7/14/00 | 67 |

13, 2002, Plan Administrator has the exclusive authority to prosecute all claims under § 547 on behalf of the various Debtors' estates.

| 20000524 | 5/22/00 | $ 9,350 | 7/14/00 | 53 |
|---|---|---|---|---|
| 20000632 | 6/5/00 | $ 8,030 | 7/28/00 | 53 |
| 20000651 | 6/19/00 | $ 8,800 | 8/11/00 | 53 |
| 20000718 | 7/17/00 | $ 8,030 | 9/7/00 | 52 |
| 20000732 | 7/31/00 | $ 8,360 | 9/21/00 | 52 |
| 20000852 | 8/14/00 | $10,200 | 9/28/00 | 45 |
| 20000868 | 8/28/00 | $15,250 | 10/19/00 | 52 |
| 20000951 | 9/11/00 | $14,760 | 11/9/00 | 59 |
| 20000965 | 9/19/00 | $18,000 | 11/9/00 | 51 |

During the Preference Period, Application and Debtors stipulated that Debtors made the following 10 payments totaling $144,665.00 (the "Preference Payments") to Application:

### TABLE 2

| Invoice Number | Invoice Date | Invoice Amount | Date Check Delivered | Days Paid from Invoice Date |
|---|---|---|---|---|
| 20000968 | 9/25/00 | $16,400 | 11/15/00 | 51 |
| 20001052 | 10/9/00 | $16,400 | 11/15/00 | 37 |
| 20001066 | 10/23/00 | $16,400 | 11/22/00 | 30 |
| 20001153 | 11/6/00 | $16,400 | 12/7/00 | 31 |
| 20001172 | 11/20/00 | $16,400 | 12/14/00 | 24 |
| 20001252 | 12/4/00 | $ 8,530 | 12/29/00 | 25 |
| 20001271 | 12/18/00 | $16,510 | 1/18/01 | 31 |
| 20001280 | 12/27/00 | $18,000 | 2/2/01 | 37 |
| 20001285 | 1/1/01 | $11,375 | 1/26/01 | 25 |
| 20010152 | 1/15/01 | $ 8,250 | 2/8/01 | 24 |

The average time between the Invoice Date and Debtors' payment to Application during the Pre–Preference period was 56.68 days. During the Preference Period the average interval between the invoice date and payment narrowed to 31.5 days. Further, during the Pre–Preference Period, Debtors only remitted one payment within 40 days of the invoice date while during the Preference Period Debtors remitted all but one payment within 40 days of the invoice date.

In addition to the amount Debtors paid to Application, Application also submitted three additional invoices to Debtors for services it rendered under the agreement: Number 20010164 dated 01/29/01 in the amount of $7,920; Number 20010248 dated 02/12/01 in the amount of $8,800; and Number 20010270 dated 2/26/01 in the amount of $10,560. Debtors did not remit payment to Application on Invoices 20010164 and 20010248 and remitted $8,213.34 on Invoice 20010270 post-petition.

Plan Administrator filed the instant adversary on July 18, 2002, seeking to avoid the Preference Payments under 11 U.S.C. § 547(b) and to recover the $144,665.00 from Application under 11 U.S.C. § 550(a)(1). Application filed an answer, essentially conceding that the Preference Payments were in fact preferential under § 547(b). Application, however, did assert three affirmative defenses contending that although the Preference Payments may have been preferential, Plan Administrator still could not avoid the transfers.

Application first maintained that the Preference Payments are not avoidable because it provided new value to Debtors contemporaneous with the Preference Payments under § 547(c)(1). Application next asserted that Plan Administrator may not avoid the Preference Payments because they were made in the ordinary course of the business under § 547(c)(2). Finally, Application argued that it provided new value to Debtors after Debtors had remitted each of the individual Preference Payments and therefore the Plan Administrator may not avoid the transfers under the subsequent new value defense contained in § 547(c)(4). In its trial brief, Application conceded that there was no evidence that it rendered new value to Debtors contemporaneously with Debtors' remission of each Preference Payment and therefore abandoned its contemporaneous new value defense under § 547(c)(1).

Plan Administrator did not introduce evidence at trial, but rather relied upon Application's stipulation of the timing of the Preference Payments. Plan Administrator argues that the timing of the Preference Payments establishes both that they were preferential under § 547(b) and not made in the ordinary course of business under § 547(c)(2).

Application produced evidence at trial that demonstrated that it did not engage in collection efforts during the Preference Period. Also, Application adduced evidence that it was typical, although not uniform, that customers would speed up payments to it as the relationship matured. Application further produced evidenced as to when it rendered the services under the Agreement with respect to each invoice it submitted to Debtors.

These uncontested facts along with the presumption of insolvency under § 547(f) demonstrate that Preference Payments were preferential under § 547(b). Also,

Application failed to meet its burden of proof that the Debtors remitted the Preference Payments in the ordinary course of business under § 547(c)(2). Application did, however, establish that it provided new value in the amount of $44,665.00 subsequent to Debtors' remission of some of the Preference Payments and that Debtors did not make an otherwise unavoidable transfer to Application on account of such new value. Accordingly, Plan Administrator cannot avoid the Preference Payments to the extent of the $44,665.00 in subsequent new value under § 547(c)(4).

## DISCUSSION

### A. The Preference Payments were Preferential Under § 547(b).

Section 547(b) provides that except as provided in § 547(c), a trustee or debtor in possession may avoid any transfer of an interest of the debtor in property made:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) while the debtor was insolvent;

(4) —(A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Application conceded in its answer and at trial every element of Plan Administrator's preference claim under § 547(b) except that Debtors were insolvent at the

time they made the Preference Payments to Application. A debtor, however, is presumed to be insolvent on and during the 90 days preceding its filing of the petition. 11 U.S.C. § 547(f). Accordingly, although a debtor has the ultimate burden of persuasion on all of the elements of its preference action under § 547(b), the creditor has the burden of producing evidence that the debtor was in fact solvent during the 90 day preference period to rebut the statutory presumption of insolvency. *Jones Truck Lines, Inc. v. Full Serv. Leasing Corp. (In re Jones Truck Lines, Inc.)*, 83 F.3d 253, 258 (8th Cir.1996).

Here, Application failed to produce any evidence that Debtors were not insolvent at the time of the Preference Payments. Accordingly, Application failed to rebut the statutory presumption that Debtors were insolvent at the time of the Preference Payments. Therefore, the Preference Payments were preferential under § 547(b).

*B. The Preference Payments were not in the Ordinary Course under § 547(c)(2).*

 Section 547(c) contains affirmative defenses and therefore the creditor has the burden of proof in establishing the statutory elements of the specific defense by a preponderance of the evidence. *Official Unsecured Creditors' Committee v. Ford Motor Credit Co. (In re Ed Jefferson Contracting, Inc.)*, 224 B.R. 740, 744 (Bankr.E.D.Mo.1998); 11 U.S.C. § 547(g).

Application first asserts that although the Preference Payments were preferential under § 547(b), Plan Administrator may not avoid the transfers because they were made in the ordinary course of business under § 547(c)(2). Application, to prevail on the ordinary course of business defense under § 547(c)(2), must establish by a preponderance of the evidence that

the transfer was: (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the creditor; (B) made in the ordinary course of business or financial affairs of the debtor and the creditor; and (C) made according to ordinary business terms. 11 U.S.C. § 547(c)(2)(A)-(C); *Concast v. Laclede Steel Co. (In re Laclede Steel)*, 271 B.R. 127, 130 (8th Cir. BAP 2002). Because Application failed to establish by a preponderance of the evidence that Debtors made the Preference Payments to Application in the ordinary course of business of Application and Debtors under § 547(c)(2)(B), the Court will reject this argument.

 The Eighth Circuit has noted that there is no precise definition of when a transfer is made in the ordinary course of business of the debtor and creditor under § 547(c)(2)(B) and that the bankruptcy court must engage in a "peculiarly" factual analysis. *Official Plan Comm. v. Expeditors Intl., Inc. (In re Gateway Pac. Corp.)*, 153 F.3d 915, 917 (8th Cir.1998). The Eighth Circuit, however, has held that the controlling factor in the analysis under § 547(c)(2)(B) is whether the timing of the payments from the debtor to the creditor during the preference period were consistent with the timing of the payments before the preference period. *Id.; Central Hardware Co. v. Sherwin–Williams Co. (In re Spirit Holding Co.)*, 153 F.3d 902, 904 (8th Cir.1998); *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 497–98 (8th Cir. 1991).

 Here, the evidence reflects that during the Pre–Preference Period, Debtors paid Application 56.68 days on average after the Invoice Date. Also, during the Pre–Preference Period, Debtors remitted only one of the payments within 40 days of the Invoice Date. During the Preference Period, however, Debtors' payments to Ap-

plication averaged only 31.5 days after the Invoice Date. Also, Debtors remitted only one payment during the Preference Period, the first payment, after 40 days of the Invoice Date. This evidence strongly suggests an inconsistency between Debtors' pattern of payment to Application during the Pre–Preference Period as compared to the Preference Period.

■ Application maintains that although Debtors' payment pattern to it may have changed during the Preference Period, the payments still fall within the scope of § 547(c)(2) for two reasons. First, Application maintains that because it did not undertake any unusual collection efforts during the Preference Period, Debtors made the Preference Payments in the ordinary course of business of both Debtors and Application. It is true that unusual collection efforts by a creditor during the preference period maybe evidence that the debtor did not make the payment in the ordinary course of business. *See In re Laclede Steel Co.,* 271 B.R. at 132. However, even if there is no evidence of unusual collection efforts by the creditor, if there is a change in the timing and pattern of the payments during the preference period, then the payments were not made in the ordinary course of business between creditor and debtor under § 547(c)(2)(B). *In re Spirit Holding Co.,* 153 F.3d at 905; *In re Laclede Steel Co.,* 271 B.R. at 132.

■ Application also argues that because it was typical for its other clients to remit payment to it on a more timely basis over time, the Preference Payments were in the ordinary course of business under § 547(c)(2)(B). However, any evidence as to the practice between Application and its other clients is relevant, if at all, only to whether the payments were made according to ordinary business terms under § 547(c)(2)(C). *See Jones v. United Savings & Loan Assoc. (In re U.S.A. Inns),* 9

F.3d 680, 685 (8th Cir.1993). Rather, the analysis of whether the payments were made in the ordinary course under § 547(c)(2)(B) must focus on the consistency between the payments at issue and the prior payment history between the specific creditor and debtor. *In re Spirit Holding Co.,* 153 F.3d at 905.

Because the Preference Payments were made much more timely than the payments during the Pre–Preference period and the pattern of payments changed substantially during the Preference Period, the Preference Payments were not made in the ordinary course of business of Application and Debtors under § 547(c)(2)(B). Accordingly, Application has failed to meet its burden of proof on the applicability of § 547(c)(2).

## C. Subsequent New Value

### 1. Introduction.

Application also asserts that because it gave new value to Debtors after Debtors had remitted the individual Preference Payments to Application, Plan Administrator may not avoid the Preference Payments under § 547(c)(4). Section 547(c)(4) states that a trustee or debtor in possession may not avoid a transfer to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor (A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

■ The policy rationale underlying the subsequent new value exception of § 547(c)(4) is to encourage creditors to deal with a financially distressed firm in the hope of rehabilitating the firm. *S. Technical College v. Hood (In re S. Technical College),* 89 F.3d 1381, 1384 (8th

Cir.1996). Specifically, § 547(c)(4) is designed to protect a creditor, such as Application, who provides the debtor with goods or services on an unsecured basis during the preference period after receiving payment from the debtor. *Id.; See also* 5 COLLIER ON BANKRUPTCY ¶ 547.04[4]. In such a case, the trustee or debtor in possession cannot avoid the initial transfer because the creditor's provision of the subsequent goods or services has replenished the estate. *Kroh Bros. Dev. Co. v. Continental Constr. Eng'r (In re Kroh Bros.),* 930 F.2d 648, 652 (8th Cir.1991).

▮▮▮ In order to prevail on a subsequent new value defense under § 547(c)(4), the creditor must establish that: (1) the creditor received a transfer that is otherwise avoidable as a preference under § 547(b); (2) after receiving the preferential transfer, the creditor advanced new value to the debtor on an unsecured basis; and (3) the debtor did compensate the creditor with an "otherwise unavoidable" transfer for the new value as of the petition date.[2] *Kroh Bros.,* 930 F.2d at 652 *(quoting New York City Shoes v. Bentley Int'l (In re New York City Shoes),* 880 F.2d 679, 680 (3d Cir.1989)).

Here, as illustrated above, it is undisputed that all of the Preference Payments to Application are otherwise avoidable as a preference under § 547(b). Also, there is no dispute that Application provided services to Debtors after receiving some of the Preference Payments on an unsecured basis. Further, because the payments Debtors remitted to Application on account of the subsequently provided services were not made in the ordinary course of business between Application and Debtors under § 547(c)(2)(B) and were preferential transfers under § 547(b), there is no dispute that the payments for the subsequently provided services are "otherwise avoidable" payments as required by § 547(c)(4)(B). *Jones Truck Lines, Inc. v. Central States Pension Fund (In re Jones Truck Lines, Inc.),* 130 F.3d 323, 329 (8th Cir.1997).

Thus, the Court must address whether Application advanced new value to Debtor and if so, how much of the new value § 547(c)(4) protects from the Plan Administrator's avoiding powers. The Court finds that Application provided Debtors with $44,665 of new value subsequent to receiving some of the individual Preference Payments. Accordingly, Plan Administrator cannot avoid the Preferential Transfers with respect to the $44,665 of subsequent new value.

*2. Application's Provision of Services under the Agreement Constitutes "New Value" under § 547(c)(4).*

▮▮▮ The first issue the Court must determine is whether the information technology services Application provided to Debtors under the Agreement during the Preference Period constitutes new value. For purposes of § 547 in general, the Code defines new value as "money or money's worth in goods, **services,** or new credit...". § 547(a)(2). (Emphasis Added). Accordingly, the value of the information technology services as reflected on the invoices constitute "new value" for purposes of § 547(c)(4). *See R.M. Taylor v. Employers Insur. of Wausau (In re R.M.*

---

**2.** The Court notes that it did not have the benefit of adequate briefing from either Application or Plan Administrator on the rather nuanced legal and factual analysis of the application of § 547(c)(4). Application merely concluded without analysis in its trial brief and at trial that it was entitled to invoke the defense. Plan Administrator inexplicably failed to address Application's subsequent new value defense in both its trial brief and at trial.

*Taylor)*, 245 B.R. 629, 635 (Bankr.W.D.Mo. 2000).

 The Court notes however, that the $18,000.00 charge listed on Invoice No. 2001280 relates to a service fee Application charged Debtors for Debtors' permanent employment of one of Application's employees. As explained above, one of the policy rationales underlying the subsequent new value defense is to protect a creditor who replenishes the estate with new value after receiving a preferential transfer. Accordingly, a fee that a creditor levies without providing corresponding value to the debtor does not constitute "new value" for purposes of § 547(c)(4). *See Tenn. Valley Steel Corp.*, 201 B.R. at 941 n. 17. Therefore, the $18,000 service fee related to Invoice No. 2001280 is not on account of Application's provision of subsequent new value.

*3. Application May offset the Subsequent New Value Against All Prior Preferential Transfers.*

 There is a split of authority as to whether a creditor may offset the new value it provided against all previous preferential transfers or only the immediately preceding preferential transfer. Another bankruptcy Court within this district has held that § 547(c)(4) allows a creditor to offset the new value it provides against all previous preferential transfers. *Garland v. Union Elec. Co. (In re Garland)*, 19 B.R. 920, 926 (Bankr.E.D.Mo.1982). A small number of courts, however, have interpreted § 547(c)(4) as only allowing the creditor to offset the new value against the immediately preceding preferential transfer. *See e.g. Leathers v. Prime Leather Finishes Co. (In re Leathers)*, 40 B.R. 248, 251 (D.Me.1984). The Court will adopt the *Garland* Court's analysis of § 547(c)(4) be-

cause that interpretation comports with both the text of § 547(c)(4) and the policy rationale underlying § 547(c)(4).[3]

The first reason why the *Garland* Court's approach is preferable is that it is consistent with the language of the statute itself. Section 547(c)(4) states that a trustee or debtor in possession may not avoid a transfer if the creditor provided new value to the debtor after the creditor made an initial preferential transfer. As the Ninth Circuit has pointed out, the statute clearly does not limit the creditor's ability to offset the new value against only the immediately preceding preference payments. *Mosier v. Ever–Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228, 231–32 (9th Cir.1995). Rather, the only requirement that the text of § 547(c)(4) imposes is that the creditor can only offset the new value it provided to the debtor against preferential transfers it received prior to extending the new value. *Id.* Thus, the plain language of § 547(c)(4) itself allows the creditor to offset the new value against all prior preferential payments. *Id.; Williams v. Agama Sys., Inc. (In re Micro Innovations Corp.)*, 185 F.3d 329, 333 (5th Cir. 1999).

The *Garland* Court's interpretation of § 547(c)(4) is also consistent with the policy rationale underlying the statute. As outlined above, Congress enacted § 547(c)(4) to encourage creditors to continue to do business with financially distressed firms. Allowing the creditor to offset the new value against all previous preferential transfers furthers this policy by protecting the creditor to the full extent that it provides subsequent services on an unsecured basis. *Crichton v. Wheeling Nat'l Bank (In re Meredith Manor, Inc.)*, 902 F.2d 257, 259 (4th Cir.1990).

**3.** This is clearly the majority position on the issue. *See Fitzpatrick v. Rockwood Water Sys.*

*(In re Tenn. Valley Steel Corp.)*, 201 B.R. 927, 940 (Bankr.E.D.Tenn.1996) (Collecting cases).

*4. Application Provided $44,665.00 in New Value After Receiving Some of the Preferential Transfers*

Application produced evidence at trial as to the date it provided new value with respect to each invoice, the date Debtors delivered the check to it with respect to each invoice and the amount Debtors transferred to it with respect to each invoice. Specifically, Application produced the following evidence with respect to each transfer Debtors made to it during the Preference Period:

**TABLE 3**

| Invoice Number | Invoice Date | For Services Delivered | Amount of Payment | Date Check Delivered |
|---|---|---|---|---|
| 2000968 | 9/25/2000 | 09/10/2000–09/23/2000 | $16,400.00 | 11/15/2000 |
| 2001052 | 10/09/2000 | 9/24/2000–10/07/2000 | $16,400.00 | 11/15/2000 |
| 20001066 | 10/23/2000 | 10/08/2000–10/21/2000 | $16,400.00 | 11/22/2000 |
| 2001153 | 11/06/2000 | 10/22/2000–11/04/2000 | $16,400.00 | 12/07/2000 |
| 20001172 | 11/20/2000 | 11/05/2000–11/18/2000 | $16,400.00 | 12/14/2000 |
| 20001252 | 12/4/2000 | 11/19/2000–12/02/2000 | $ 8,530.00 | 12/29/2000 |
| 20001271 | 12/18/2000 | 12/03/2000–12/16/2000 | $16,510.00 | 1/18/2001 |
| 20001285 | 1/1/2000 | 12/17/2000–12/30/2000 | $11,375.00 | 1/26/2001 |
| 200010152 | 1/15/2000 | 12/31/2000–1/13/20001 | $ 8,250.00 | 2/08/2001 |
| 20010270 | 2/26/2001 | 2/11/20001–2/28/2001 | $10,560.00 | 03/16/2001 |

The Court is guided by three principles in determining which of the payments listed in Table 3 Application may offset against prior Preference Payments under § 547(c)(4). First, as discussed above § 547(c)(4) limits the creditor's ability to offset the new value only against the preferential transfers it received prior to extending the new value. Second, for purposes of § 547(c)(4), a preferential transfer occurs on the date the debtor delivers the check to the creditor. *In re Kroh Bros. Dev. Co.,* 930 F.2d at 651. Third, § 547(c)(4) does not apply to post-petition advances. *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.),* 850 F.2d 1275, 1284 (8th Cir. 1988). Accordingly, the payment on Invoice No. 20010270 of $10,500.00 is not protected by § 547(c)(4) because it occurred post-petition

With these principles in mind along with examining the timing of each Preference Payment and the date Application provided the services with respect to each invoice as listed in Table 3, Application may offset its provision of new value against prior Preference Payments as follows:

**TABLE 4**

| Invoice Number | Payment Amount | Amount of Prior Preferential Transfers Subject to Offset |
|---|---|---|
| 20000968 | $16,400.00 | $0 |
| 20001052 | $16,400.00 | $0 |
| 20001066 | $16,400.00 | $0 |
| 20001153 | $16,400.00 | $0 |
| 20001172 | $16,400.00 | $0 [4] |
| 20001252 | $ 8,530.00 | $ 8,530.00 (All $8,350.00 from Payment on Invoice No. 2000968) |
| 20001271 | $16,510.00 | $16,510.00 ($7,870 from Payment on Invoice No. 2000958 + $8,640.00 from Invoice No. 20001052) |
| 20001285 | $11,375.00 | $11,375.00 ($7,760 from Payment on Invoice No. 20001052 + $3,615 from Payment on Invoice No. 20001066) |
| 20010152 | $ 8,250.00 | $ 8,250.00 (All $8,250.00 from Payment on Invoice No. 20001066). |

The aggregate amount of new value that Application may offset against prior Preference Payments as indicated in the third column of Table 4 is $44,665.00.

5. *Conclusion*

Application provided Debtors with $44,665.00 in new value subsequent to receiving some of the individual Preference Payment. There is no dispute that Application provided the new value on an unsecured basis. Further, the uncontroverted evidence indicates that Debtors' payment of the $44,665.00 to Application on account of the new value was "otherwise avoidable" under § 547(c)(4)(B). Accordingly, Plan Administrator may not avoid the Preference Payments with respect to the $44,665.00 in new value Application provided to Debtors under § 550(a)(1). ·

*Conclusion*

The Preference Payments totaling $144,665.00 were preferential under § 547(b). Also, the Preference Payments were not made in the ordinary course of the business of Debtors and Application under § 547(c)(2)(B). Application did provide Debtors, however, with $44,665.00 in subsequent new value under § 547(c)(4). Accordingly, Plan Administrator cannot avoid the $44,665.00 Debtor provided to Application in account of the subsequent new value. Therefore, Plan Administrator is entitled to recover $100,000.00 from Application under § 550(a)(1).

**4.** This invoice covers services Application provided from November 5, 2000 through November 18, 2000. As indicated in Table 3, Debtors made the first preferential transfer on November 15, 2000. However, because Application failed to establish what services it rendered to Debtors after Debtors made the November 15 transfer, Application failed to meet its burden of proof in establishing that it provided the new value after receiving the November 15 preferential transfer. *See Kellman v. P.S.E. & G. (In re Jolly "N", Inc.),* 122 B.R. 897, 909 (Bankr.D.N.J.1991).

An Order consistent with this Memorandum Opinion will be entered this date.