### In re OMNIPLEX COMMU-NICATIONS GROUP, L.L.C., Debtor.

### The Official Plan Committee of Omniplex Communications Group, L.L.C., Plaintiff,

### v.

### GE Capital Corporation, Defendant.

**Bankruptcy No. 01–42079–399.**

**Adversary No. 03–4502–399.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

July 31, 2003.

Millicent A. Dohr, Robert E. Eggmann, St. Louis, MO, for the Official Plan Committee/Plaintiff.

David L. Going, Jovita M. Walker, St. Louis, MO, for GECC/Defendant.

## MEMORANDUM OPINION

BARRY S. SCHERMER, Bankruptcy Judge.

This is a preference case involving the subsequent new value defense. See 11 U.S.C. Sec. 547(c)(4). The Plaintiff is the Official Plan Committee (the "Committee") of Omniplex Communications Group, L.L.C.(the "Debtor"). The Committee is the entity established to liquidate the Debtor's bankruptcy estate and is authorized to bring this action pursuant to the confirmed Chapter 11 Plan of Liquidation. General Electric Capital Corporation ("GECC") is the Defendant who received a preferential transfer of $115,050.63 on December 28, 2000.

## FACTS

The Debtor and GECC entered into a Master Lease Agreement and Equipment Schedule. Under the terms of the lease the Debtor selected $4,790,247.37 of equipment from Lucent Technologies which it wished to acquire. GECC purchased the

equipment from Lucent and leased it to the Debtor. The lease commenced on October 1, 2000 and required monthly payment to GECC by the Debtor of $57,880.56. Under the terms of the lease the Debtor agreed to delivery of the leased equipment in Phoenix, Arizona, at a temporary staging area in an unassembled condition and agreed to commence lease payments immediately although the equipment would not be in working order for some time.. It was understood that the leased equipment would later be moved to and installed at various locations. The Debtor made the lease payment due October 1, 2000 on October 10,2001. The Debtor's payment on December 28, 2000 of $115,050.63 represented the November and December 2000 lease payments. The Debtor did not pay the monthly lease payments for January and February 2001. The Debtor's Chapter 11 petition was filed February 28, 2001 and the parties have stipulated that the December 28, 2000 payment was a preference.

GECC asserted that it provided new value to the Debtor subsequent to receipt of the preference in the form of the value of the leased equipment for the months of January and February 2001. According to GECC, the amount of new value equals the value of the leased equipment for the months of January and February 2001 as measured by the rent agreed to be paid under the lease. The new value is two months of lease payments or the exact amount of the preference.

The Committee countered by presenting evidence that the leased equipment while unassembled was nevertheless considered valuable when and if it could be assembled and put into a product line. Later, the Debtor determined that there was no value to the equipment when, on January 24, 2001, the Debtor received a letter from Lucent advising that Lucent would no longer support the leased software and equipment. Lucent also advised the Debtor on that date that it would abandon the project for which the equipment was acquired. Lastly, the Debtor's president testified that the equipment had not undergone any physical change since the payment made to GECC, in December 28, 2000. The reason that the December payment was made was simply to avoid a material breach of the loan covenants that the Debtor was under with its primary lender.

Each party imparts a different meaning to Section 547(c)(4). GECC contends that new value is measured by the value set forth in a contract. The Committee takes the position that the new value in Section 547(c)(4) must be of actual value or benefit to the debtor and is not merely measured by a contract.

## DISCUSSION

■ The task of resolving the dispute over the meaning of the statute begins where all such inquires must begin: with the language of the statute itself. *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030 (1989)

Section 547(c)(4) provides:

(c) The trustee may not avoid under this section a transfer

    (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor

        (A) not secured by an otherwise unavoidable security interest;

        (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

Section 547(a)(2) provides that:

"new value" means money or money's worth in goods, services, or new credit, or lease by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

■ The new value defense is an exception to the general rule that preferential transfers may be recovered. In order to prevail on a subsequent new value defense under section 547(c)(4) the creditor "must establish that: (1) the creditor must have received a transfer that is otherwise voidable as a preference under section 547(b); (2) after receiving the preferential transfer, the preferred creditor must advance new value, to the debtor on an unsecured basis; and (3) the debtor must not have fully compensated the creditor for the 'new value' as of the date that it filed its bankruptcy petition". *New York City Shoes v. Bentley Int'l (In re New York City Shoes)*, 880 F.2d 679, 680 (3d Cir. 1989); (see also *Bridge Information Systems, Inc. v. Application Engineering Group, Inc. (In re Bridge Information Systems, Inc.)* 287 B.R. 258, 265 (Bankr. E.D.Mo.2002)). The purpose of Section 547(c)(4) is "to encourage creditors to deal with troubled businesses in the hope of rehabilitation." *S. Technical College v. Hood (In re S. Technical College)*, 89 F.3d 1381, 1384 (8th Cir.1996). A subsequent advance of new value is excepted because "a creditor who contributes new value in return for payments from the incipient bankrupt... should not later be deemed to have depleted the bankruptcy estate to the disadvantage of other creditors." *Charisma Inv. Co. v. Airport Sys., Inc. (In re Jet Fla. Sys. Inc.)*, 841 F.2d 1082, 1083 (11th Cir.1988). Thus, "the relevant inquiry under section 547(c)(4) is whether the new value replenishes the estate." *Kroh Bros. Dev. Co. v. Continental Const. Eng'rs, Inc. (In re Kroh Bros. Dev. Co.)*, 930 F.2d 648, 652 (8th Cir.1991).

■ The burden of proof for the defenses to a section 547(b) preference are found in section 547(c). The creditor has the burden of proof in establishing the statutory elements of the specific defense by a preponderance of the evidence. *In re Bridge Information Systems, Inc.* 287 B.R. at 264; 11 U.S.C. Section 547(g).

In the context of section 547(c)(4) where a lessee who paid rent for land and then failed to pay for two months subsequent to the month of payment but immediately prior to its bankruptcy, the Eighth Circuit has held: "Each month, a lessee receives new value from its lessor when it continues to **use and occupy** the rented property". *In re S. Technical College*, 89 F.3d at 1384 (emphasis added). In that case the Court held that the debtor's "continued use of the ... leased premises enabled it to continue operations" and the landlord provided money's worth to the debtor. *Id.* at 1384. "The rent-free use of the properties conferred a material benefit on STC: the ability to continue operations on and generate income from the leased properties between the date of the preferential transfer and the filing of the bankruptcy petition." *Id.* at 1385. Equally instructive in the Eighth Circuit's *S. Technical College* decision is its citation with approval of the Eleventh Circuit's *Jet Florida System, Inc.* decision. In that case the court held that the lessee-debtor had not received new value, but only because the lessee-debtor had made no use of the rental property throughout the preference period. According to the Eleventh Circuit, "While (the lessor's) forbearance might have constituted new value had Air Florida actually stayed and used the leased prop-

erty, or had Air Florida been able to find a sublessee... the debtor was placed in the financially precarious position of having to pay rent for property it could not beneficially use. Absent such use, (the lessor's) forbearance to terminate the lease could not constitute new value." *Jet Florida System, Inc.* 841 F.2d at 1084.

Applying the holding in *S. Technical College* to the facts of the case, the Debtor had the use and benefit of the GECC leased equipment for the month of January, 2001. While it may not have been actively using the leased equipment, the Debtor intended to once it was relocated and assembled. The Debtor's opportunity and intention to use the leased equipment provided a material benefit to the Debtor. That benefit is measured by the rent reserved under the lease, $57,880.56. The preferential transfer made on December 28, 2000 will be reduced by this amount. However, it is undisputed that upon notification to the Debtor on January 24, 2001 that Lucent would no longer support or continue its product line for which the equipment was acquired, the Debtor no longer could or intended to receive any material benefit from the use of the leased equipment. Accordingly, no new value was provided by GECC under the lease during February, 2001. In summary, GECC is entitled to one month of rent as new value and the Committee is entitled to recover $57,880.56 from GECC under section 550(a)(1).

An Order consistent with this Memorandum Opinion will be entered this date.

## ORDER

Consistent with the Memorandum Opinion entered this day, judgment is GRANTED in favor of Plaintiff, The Official Plan Committee Of Omniplex Communications Group, L.L.C. and against Defendant, GE Capital Corporation in the amount of $57,880.56.